# CASES DETERMINED

AT THE

# January Term, 1920.

WISCONSIN SAVINGS LOAN & BUILDING ASSOCIATION,
Appellant, vs. BOEHME, imp., Respondent.

*January 16—February 10, 1920.*

*Mortgages: Deeds which are in fact mortgages: Evidence: Assumption clause in deed: Consideration: Judgment declaring the instruments mortgages: Striking out assumption clause.*

1. In an action to foreclose a mortgage the court may adjudge that warranty deeds given by the defendant's assignee to a codefendant were in fact mortgages and strike therefrom a clause whereby the grantee assumed payment of the mortgage.
2. In an action to foreclose a mortgage given to a building and loan association, wherein it appeared that the mortgagor had executed a deed to the property containing a clause that the grantee assume the mortgage, and that the land passed by similar deeds to defendant, who claimed that the deed from his immediate grantor was in fact a mortgage, the fact that testimony of both grantor and grantee that such deed was prepared in a certain real-estate office was contradicted by conclusive evidence that it was prepared in the office of plaintiff did not so discredit their testimony as to make erroneous a finding that the deeds were mortgages.
3. The land having passed by deeds wherein the grantee assumed the mortgage to one of the defendants, who contended that the deed from his immediate grantor was in fact a mortgage, the evidence is *held* to support a finding that the transaction was for the purpose of extending security to the defendant and that the deed executed to him was in fact a mortgage.
4. Where a deed is in fact a mortgage and executed for the purpose of extending security to the grantee, a clause wherein the grantee assumes a mortgage on the property conveyed is not supported by a consideration, and it is immaterial whether the clause was inserted through fraud, or mistake, or whether the grantee knew thereof.

VOL. 171—1

APPEAL from a judgment of the circuit court for Milwaukee county: W. B. QUINLAN, Judge. *Affirmed.*

Mortgage foreclosure.   Plaintiff was a savings, loan and building association.   In October, 1912, the defendant William Strauss subscribed for membership in said association and a certificate for eighty shares of stock was issued to him.   Two weeks later Strauss secured a loan of $8,000 from the plaintiff and, as collateral security therefor, executed one of the mortgages sought to be foreclosed in this action.   In December, 1912, he and his wife, by warranty deed, conveyed the premises to Oscar Strauss, who assumed and agreed to pay the mortgage.   January 20, 1913, Oscar Strauss conveyed the premises by warranty deed to defendants James O'Connor and Josephine O'Connor, his wife, who assumed and agreed to pay the mortgage, and shortly thereafter William Strauss assigned his certificate in the building and loan association to O'Connor and wife.   On May 12, 1913, O'Connor and wife conveyed to the defendant *Louis Boehme* by warranty deed, by the terms of which *Boehme* assumed and agreed to pay the mortgage.   August 1, 1913, another deed from the same grantors was executed to *Boehme,* which also contained a clause by which *Boehme* assumed and agreed to pay the mortgage.   The certificate of stock in the building and loan association was also duly assigned to *Boehme* May 12, 1913.   On August 2, 1913, *Boehme* conveyed the premises to H. E. Hoffman, who thereafter conveyed the same to Adolph L. Kern, subject to a certain land contract which she had given to the Friedmann Laboratories for Tuberculosis Research.

The defendant *Boehme,* in answer to the complaint, alleged, in effect, that the O'Connors had executed and delivered to him the warranty deeds merely as security for moneys which O'Connor owed him at the time and as security for moneys which *Boehme* was to advance to the building and loan association in monthly instalments as they should come due in order to protect O'Connor's interest in

the premises, and that the deeds were in fact mortgages, and prayed that they be so declared by the court, and that the clause therein by which he assumed and agreed to pay the mortgage in question be stricken therefrom. Upon this contention the court found in favor of *Boehme* and that he was entitled to judgment declaring said deeds to be mortgages, and that they be further reformed by striking from each of the said deeds the clause wherein said *Louis Boehme* assumed and agreed to pay the $8,000 mortgage given to the plaintiff by William Strauss and wife. The court also found that said clause was fraudulently inserted in said deeds without the knowledge of *Boehme* and his grantors and contrary to their agreement and understanding. The plaintiff appealed from that part of the judgment adjudging the deeds to be mortgages and striking from each of said deeds the clauses wherein the said *Louis Boehme* assumed and agreed to pay the $8,000 mortgage.

For the appellant there was a brief by *Kronshage, Mc-Govern & Hannan* and *McGovern, Hannan, Devos & Reiss,* all of Milwaukee, and oral argument by *Wallace Reiss* and *T. J. Hannan.*

For the respondent *Boehme* there was a brief by *William J. Morgan,* attorney, and *Hoyt, Goff & Morgan,* of counsel, all of Milwaukee, and oral argument by *William J. Morgan.*

OWEN, J. That it was competent for the court, upon sufficient evidence, to adjudge the warranty deeds to be in fact mortgages and to strike therefrom the assumption clause, is settled by the case of *Broadbent v. Hutter,* 163 Wis. 380, 157 N. W. 1095. The only question is whether the findings of the court in this respect are supported by clear and satisfactory evidence.

It appears without dispute that *Boehme* and O'Connor had been friends for twenty years; that formerly O'Connor had managed the Pabst Hotel in the city of Milwaukee and

prospered while in that business; that he sold out the Pabst Hotel business and purchased the Lalumiere Hotel at Oconomowoc, when he met with reverses and lost about all he had; that *Boehme,* as a friendly act, advanced him $4,000 with which to repurchase the Pabst Hotel business; that O'Connor had repaid him but a small portion of the $4,000 loan, and that at the time of the execution of the deed there was more than $3,000 still due. O'Connor had purchased these premises through Benjamin Frey, Inc., a real-estate agency in Milwaukee, which had assured him of an early sale, and he left the property in the hands of the company for that purpose. A purchaser was not procured as readily as was expected, and O'Connor was defaulting in his monthly payments to the building and loan association. The Frey Company urged him to make some arrangements to meet these payments, representing to him that a better sale could be secured if he was not in default thereon. O'Connor went to *Boehme* and voluntarily offered to deed him the property as security for his existing indebtedness and for such sums as it might be necessary to advance to keep up the payments to the building and loan association until a sale of the property could be secured. *Boehme* had not asked O'Connor for security, and dealing in real estate was entirely foreign to his business. After consulting with the Frey Company and being advised that he would incur no responsibility by taking the deed, and upon further assurance that the deed would be the proper instrument for the purpose, he acquiesced in O'Connor's proposal, and on that day paid to the building and loan association over $400, in which amount O'Connor was in default to the association. He also made monthly payments of $106.67 in June, July, and August. The property remained with the Frey Company for disposal. *Boehme* exercised no control over it, but stated to O'Connor and the Frey Company that when they wanted him to telephone to him, and he would sign such papers as they required.

The plaintiff seemingly attaches great significance to the circumstance that both *Boehme* and O'Connor testified that the deeds from the O'Connors to *Boehme,* especially the first one, were executed in the office of the Frey Company. After the case had been tried and the court had filed findings of fact and conclusions of law ordering judgment in favor of *Boehme* upon his contention, plaintiff discovered that the first deed was drawn in the office of the building and loan association by the assistant secretary thereof, and made application to the court to have the case reopened for the purpose of taking testimony, among other things, upon the question of where the first deed was in fact prepared.  The application was granted by the court, and upon the taking of such additional testimony it did appear quite conclusively that the first deed was prepared in the offices of the building and loan association, and not in the Frey office, as formerly testified to.  Plaintiff urges that this incident so discredits the testimony of *Boehme* and O'Connor that the finding of the court that the deeds as given were mortgages should not be sustained.  We cannot so view it.  The case was tried five years after the transaction.  While *Boehme* and O'Connor, upon the first hearing, were positive that the deed was drawn in the Frey office, they also testified to negotiations had in the office of the building and loan association at about the same time and as a part of the same transaction.  It is not at all surprising that after a period of five years their recollections should not be entirely clear as to whether the deed was drawn in the Frey office or in the office of the plaintiff, nor can we attach much importance to the question of whether it was drawn in the one or the other office.  The controlling circumstances are that O'Connor owed *Boehme* money; that he had the property listed with the Frey Company for sale or exchange; that he was in default upon his payments to the building and loan association; that in order to preserve his interest in the property such payments had to be made; that he offered the security

to *Boehme,* unsolicited by him, and that *Boehme* advanced him more money for the purpose of making his payments to the building and loan association, exercised no control over the property, but left it in the hands of the Frey Company and executed a deed therefor to whom and when O'Connor directed. All of these circumstances, about which there can be no controversy, strongly indicate that the transaction was for the purpose of extending security to *Boehme,* and that the warranty deeds executed by the O'Connors were intended to be, and in fact were, mortgages.

If they were mortgages, then the assumption clause had no place therein and there was no consideration upon which the agreement can be supported. *Broadbent. v. Hutter, supra.* There being no consideration in support of the agreement to assume the mortgage, it matters not whether the clause was inserted through fraud, as the court found, or by mistake of the scrivener, or the mutual mistake of the parties, or whether *Boehme* knew, or in the exercise of proper care should have known, that the deed carried with it an agreement to pay the $8,000 mortgage. The agreement, being void for want of consideration, cannot be enforced, and it was properly stricken out. The findings of the court of which appellant complains are well supported by clear and satisfactory evidence, and that portion of the judgment granting affirmative relief to *Boehme* should be affirmed.

*By the Court.*—Judgment affirmed.