IN RE the MARRIAGE OF:

Linda ROHDE-GIOVANNI p/k/a Linda Susan Baumgart, Petitioner-Appellant-Petitioner,†

v.

Paul Albert BAUMGART, Respondent-Respondent.

Supreme Court

*No. 01–3014. Oral argument January 14, 2004.— Decided March 25, 2004.*

2004 WI 27

(Also reported in 676 N.W.2d 452.)

† Motion for reconsideration denied 5-19-04.

601

602

For the petitioner-appellant-petitioner there were briefs by *Linda Roberson, Anthony J. Lucchesi,* and *Balisle & Roberson, S.C.,* Madison, and oral argument by *Linda Roberson.*

For the respondent-respondent there was a brief by *Stephen C. Beilke* and *Murphy Desmond, S.C.,* Madison, and oral argument by *Stephen C. Beilke.*

¶ 1. N. PATRICK CROOKS, J. The petitioner in this case, Linda Rohde-Giovanni (Rohde-Giovanni), formerly Linda Baumgart, seeks review of a published court of appeals' decision, affirming an order of the Dane County Circuit Court, which terminated maintenance. Paul Baumgart (Baumgart) and Rohde-Giovanni were divorced in 1992. In the divorce judgment, Baumgart was ordered to make both child support and maintenance payments to Rohde-Giovanni. In 2001, Baumgart brought a motion to terminate maintenance. The circuit court concluded that a substantial change in circumstances was present such that terminating maintenance was appropriate. Rohde-Giovanni appealed, and a divided court of appeals affirmed the circuit court order.

¶ 2. We conclude that there was sufficient evidence from which the circuit court could reasonably find a substantial change in the parties' circumstances, and from which the court could conclude that such circumstances justified the termination of maintenance after two more years. The test for whether there is a substantial change in circumstances is the same, re-

gardless of whether or not the issue of maintenance was stipulated to or contested during the divorce proceedings. The objectives of support and fairness must both be considered on the issue of modification of a maintenance award as well, whether there was a stipulation or a contest in the original proceedings. Moreover, we conclude that educational expenses a party incurs on behalf of an adult child may, but do not have to be, considered when examining the party's budget. This is a decision left to the sound discretion of the circuit court. While we do not anticipate frequent consideration of such educational expenses, we recognize that unusual or extraordinary circumstances could justify such consideration.

I

¶ 3. Baumgart and Rohde-Giovanni were married on April 15, 1973. During their marriage, the parties had four children. Rohde-Giovanni worked inside the home and was primarily responsible for the care of the parties' children, while Baumgart was employed outside the home. After 17 years of marriage, Rohde-Giovanni commenced a divorce action in December 1990. In December 1992, Judge Susan Steingass of the Dane County Circuit Court granted a judgment of divorce.

¶ 4. During the divorce proceedings, the parties stipulated that Baumgart would pay $1980 per month in child support, plus 29 percent of the gross amount of his bonus. Although the parties were to have joint legal and physical custody, the children would continue to live with Rohde-Giovanni, and she would continue to be the children's primary caregiver. The issue of maintenance for Rohde-Giovanni, however, was contested.

¶ 5. At the time of the divorce proceedings, Rohde-Giovanni was taking classes at a local college

and grossing approximately $734 per month, or $8808 per year, as a group counselor. She expected to receive her degree in two years. Rohde-Giovanni's goal was to teach special needs children, and she anticipated that she could earn between $22,000 and $28,000 per year. She expected that the maximum amount of income she could earn would be $40,000 per year, approximately 15 years after entering the work force. When considering the appropriate amount of maintenance to award, Judge Steingass also considered the fact that Rohde-Giovanni suffered from the following physical ailments: depression, poor health, chronic back pain, a prediabetic condition, arthritis in her hands, tendonitis in her feet, and basic fatigue. At the time of the divorce, Baumgart had an M.B.A., which he earned during the early part of the parties' marriage, and was earning $7750 in gross income per month, or $93,000 per year.

¶ 6. Judge Steingass concluded that the circumstances were appropriate for an award of indefinite term maintenance and awarded maintenance to Rohde-Giovanni in the amount of $950 per month. The maintenance award left both parties unable to meet their projected monthly budgets. However, Judge Steingass noted that, in the interest of fairness, the burden of operating with less money than originally budgeted should fall on both parties.

¶ 7. Judge Steingass further recognized that Rohde-Giovanni's years of exclusively dedicating herself to caring for her family had left her unable to generate the amount of income that Baumgart was capable of generating. The circuit judge noted that given the fact that Rohde-Giovanni was primarily responsible for the care of the parties' children, her low pay and limited availability to work would not allow her to enjoy a standard of living comparable to the standard

she enjoyed while married. Nevertheless, the circuit judge ultimately concluded that this financial arrangement should only be applicable when child support obligations were being paid as agreed and Rohde-Giovanni was in school. Moreover, the circuit judge noted that her calculations would become outdated once Rohde-Giovanni earned in accordance with her full capacity after completing her education and when the child support amount changed.[1]

¶ 8. In June 2001, Baumgart filed a motion in Dane County Circuit Court to terminate or reduce his maintenance payments to Rohde-Giovanni. Conversely, Rohde-Giovanni moved the court for an increase in maintenance. A family court commissioner dismissed the parties' motions, indicating that neither an increase nor a decrease in maintenance was appropriate. The commissioner noted that even though there were substantial changes in the parties' situations, such as the fact that Rohde-Giovanni's income had substantially increased, that she completed the degree she was pursuing at the time of the divorce and also obtained a Master's Degree, and that three of the parties' four children were now adults, the amount of maintenance should not be adjusted.

---

[1] In Finding of Fact #40, as listed in the judgment of divorce, the following was stated:

> This division is based upon a number of assumptions. It applies only during the period of time when child support is being paid as agreed, and Ms. Baumgart is in school. This analysis becomes outdated once she earns in accordance with her capacity with completion of her education, and once the child support figures change. This also assumes that each party will file as head of household, that Paul will claim the four children as dependents, and that Linda Baumgart will claim real estate taxes and home mortgage interest as itemized deductions.

¶ 9. Baumgart then requested a de novo hearing. Judge Patrick J. Fiedler, Dane County Circuit Court, heard Baumgart's motion to terminate maintenance and Rohde-Giovanni's motion to increase maintenance in October 2001. In the proceedings before Judge Fiedler, the following new facts were brought to light: Rohde-Giovanni obtained her Master's Degree in special education in 1994. Rohde-Giovanni grossed $43,355 per year from her job working with emotionally disturbed children and approximately $13,968 per year from her part-time work as a counselor. Rohde-Giovanni also received approximately $3000 per year in interest and dividend income, bringing her total gross income to approximately $61,000 per year. Rohde-Giovanni had over $70,000 in a money market account at the time of the hearing before Judge Fiedler. Rohde-Giovanni continued to suffer from health problems, but her ailments had not significantly increased since the time of the divorce. Moreover, Rohde-Giovanni did not submit any evidence that, because of her health condition, she was unable to earn a living. The parties' one remaining minor child lived with Rohde-Giovanni. As a result of the decrease in the number of minor children living with Rohde-Giovanni, Baumgart's child support obligation was decreased to $1513 per month. Rohde-Giovanni allowed her 19–year-old son to live with her rent-free. Rohde-Giovanni also paid for his tuition, books, car, and other living expenses. An adult friend of Rohde-Giovanni's resided in her basement rent-free. The parties' adult daughter also lived with Rohde-Giovanni at times, although there was some discrepancy as to the exact duration and timing of her stay.[2]

---

[2] The dissent has provided a calculation, which takes into account Rohde-Giovanni's budget, expenses, and the cost of

607

Baumgart grossed $104,665 per year from his job, and he also received $2200 per year for speaking engagements. Baumgart's current wife earned a base salary of approximately $69,000 gross per year. According to the information submitted to the circuit court, Baumgart's monthly expenses have increased approximately 20 percent since the divorce. Those monthly expenses included his mortgage payment of approximately $1577, condominium association fees of $135, life and health insurance payments of approximately $230, payments for his minor son's orthodontia work, medical and drug expenses not covered by insurance of $450, vehicle payments of approximately $732, debt or installment payments of approximately $1247, aviation hobby expenses of $250, clothing budget of $200, and an entertainment budget of $300.

¶ 10. After hearing testimony and receiving exhibits from both parties, Judge Fiedler concluded that there had been a substantial change in circumstances, such that the award of indefinite term maintenance in the divorce judgment should be converted to limited term maintenance that would end in December 2003, a full six months after Baumgart was to make the last child support payment to Rohde-Giovanni. The court noted that while Rohde-Giovanni was within her right to provide financial assistance to the parties' adult children, as she was free to spend her discretionary funds in a manner of her choosing, she could not expect Baumgart to be required to subsidize this decision. The court noted that although Baumgart was able to share his living expenses with his current wife, he could not

living increase. Dissent, ¶ 68. We note that this calculation was not contained in the record and has gone beyond the information contained therein.

use Baumgart's current wife's income as a basis to grant an increase in maintenance.

¶ 11. Judge Fiedler also stated that Judge Steingass contemplated that her order would likely need to be reconsidered once Rohde-Giovanni completed her education. Noting that Rohde-Giovanni had apparently completed all of the education that she had set out to obtain and was earning above her anticipated maximum salary, the court stated that she should now be able to closely approximate the marital standard of living. The court noted that Rohde-Giovanni's current standard of living could approximate the standard she enjoyed during marriage, provided that she was willing to tighten up her expenditures with respect to her adult children. Rohde-Giovanni appealed.

¶ 12. On appeal, Rohde-Giovanni stated that the circuit court erred in terminating maintenance because the circuit court erroneously concluded that Rohde-Giovanni could live at the marital standard of living without maintenance payments from Baumgart. The court did not factor in the financial support that she was providing to her adult child for education expenses. Rohde-Giovanni further argued that the circuit court did not properly apply the fairness objective of maintenance, and that the conversion of her indefinite term maintenance to limited term maintenance was due to the circuit court's failure to apply the appropriate legal test.

¶ 13. A divided court of appeals concluded that the circuit court appropriately exercised its discretion in deciding to terminate maintenance at the end of December 2003, and it thus affirmed the circuit court's decision. The court of appeals, Judges Paul Lundsten and David G. Deininger, stated that it first had to consider whether a substantial change in the parties'

609

circumstances had occurred. In deciding whether or not to grant maintenance, the court of appeals noted that the circuit court must consider the factors listed by Wis. Stat. § 767.26 (1999–2000).[3] The court of appeals stated

---

[3] All references to Wisconsin Statutes are to the 1999–2000 edition. Wisconsin Stat. § 767.26 provides, in relevant part:

Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

(1) The length of the marriage.

(2) The age and physical and emotional health of the parties.

(3) The division of property made under s. 767.255.

(4) The educational level of each party at the time of marriage and at the time the action is commenced.

(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(7) The tax consequences to each party.

(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9) The contribution by one party to the education, training or increased earning power of the other.

610

that these factors are designed to further two important objectives: (1) support to the spouse in keeping with the parties' needs and earning capacities and (2) fairness in the financial arrangements between the parties. The court of appeals further stated that the fairness objective was applicable even during postdivorce proceedings involving maintenance award modifications. Further, the court of appeals did not accept Rohde-Giovanni's argument that Judge Fiedler did not find that she could reach the marital standard of living, citing to his statement that, if she would tighten her budget, she could be close to the marital standard of living.

¶ 14. The court of appeals also rejected Rohde-Giovanni's argument that her contributions to her adult son's education expenses should be considered when determining her current standard of living. The court of appeals noted that, because the circuit court found that the parties never agreed to contribute to their children's higher education expenses, Rohde-Giovanni could not demonstrate that this finding was clearly erroneous. The court of appeals stated that:

> it would be incongruous to allow maintenance for the purpose of providing the payee spouse with money to pay for the education of an adult child when the child support statutes prohibit such payments as child support. The effect of adopting (Rohde-Giovanni)'s position would be to render the child support statute prohibition on such payments meaningless.

*Marriage of Rohde-Giovanni v. Baumgart,* 2003 WI App 136, ¶ 17, 266 Wis. 2d 339, 667 N.W.2d 718 (citation omitted).

---

(10) Such other factors as the court may in each individual case determine to be relevant.

¶ 15. The court of appeals concluded that Judge Fiedler's finding that Rohde-Giovanni could attain a standard of living comparable to that enjoyed during her marriage was not clearly erroneous. The court of appeals' majority stated that, although she claimed that her budgets for food and clothing are less than when she was married, Rohde-Giovanni did not specify the exact amount of the difference. The court of appeals further noted that her budget might be stretched in other areas due to her continued financial support of the parties' adult son. Finally, the court of appeals stated that there was no evidence supporting Rohde-Giovanni's contention that "the fairness objective requires increased or continued maintenance owing to the fact that the payor spouse enjoys a higher standard of living relative to the marital standard, where the payee spouse is able to live at or above the marital standard without maintenance payments." *Id.,* ¶ 29.

¶ 16. In her dissent, then court of appeals Judge Patience D. Roggensack stated that the appropriate issue to consider in this case was whether a change in circumstances made it unjust or inequitable for the payor to continue making maintenance payments. The dissent noted that, because Judge Steingass considered Rohde-Giovanni's potential for increased earnings when entering the divorce judgment, it cannot now be used as a basis to conclude that there is a substantial change in circumstances that justifies the termination of maintenance. Judge Roggensack also concluded that the fact that Rohde-Giovanni used a portion of the maintenance payments to assist her adult son with his expenses did not produce an unjust or inequitable result for Baumgart. Moreover, the dissent disagreed

with the majority's characterization of the continued maintenance payments as amounting to indirect child support payments.

## II

¶ 17. We now consider whether there was sufficient evidence from which the circuit court could reasonably find a substantial change in the parties' circumstances that would justify the termination of maintenance after two more years. Circuit courts exercise their discretion when determining the amount and duration of maintenance. *In re Marriage of King v. King,* 224 Wis. 2d 235, 247, 590 N.W.2d 480 (1999); *In re Marriage of Olski v. Olski,* 197 Wis. 2d 237, 243 n.2, 540 N.W.2d 412 (1995). We will not disturb the circuit court's decision regarding maintenance unless the award represents an erroneous exercise of discretion. *King* 224 Wis. 2d at 248; *Olski,* 197 Wis. 2d at 243 n. 2.

¶ 18. A circuit court engages in an erroneous exercise of discretion when it fails to consider relevant factors, bases its award on factual errors, makes an error of law, or grants an excessive or inadequate award. *Olski,* 197 Wis. 2d at 243 n. 2. Moreover, "(a) discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). *See also King,* 224 Wis. 2d at 248.

¶ 19. When a question of law arises during our review of the circuit court's exercise of discretion, we

decide it independently of both the circuit court and the court of appeals. *Id.; Olski,* 197 Wis. 2d at 243 n. 2. Nevertheless, we benefit from the analyses of the circuit court and the court of appeals. *VanCleve v. City of Marinette,* 2003 WI 2, ¶ 17, 258 Wis. 2d 80, 655 N.W.2d 113; *King,* 224 Wis. 2d at 248–49.

¶ 20. Rohde-Giovanni asserts that the appropriate standard for modification of a maintenance award is "substantial change in circumstances." Rohde-Giovanni further states that the substantial change standard must be used in harmony with the unjust or inequitable standard, which states that a court may not modify a divorce court's judgment regarding maintenance, unless it would be unjust or inequitable to continue with those terms. Rohde-Giovanni contends that this standard applies regardless of whether the issue of maintenance was originally stipulated to or contested by the parties.

¶ 21. Rohde-Giovanni further states that the court of appeals incorrectly concluded that it need not analyze *In re Marriage of Hefty v. Hefty,* 172 Wis. 2d 124, 493 N.W.2d 33 (1992), because she did not provide any factual evidence that she had, in fact, fallen below the marital standard of living. Rohde-Giovanni counters that Baumgart had the burden of proof, in order to establish that a modification of maintenance was justified; thus, the *Hefty* decision should be applied in this case. Rohde-Giovanni notes that the only explanation for the court of appeals' decision to affirm the circuit court's modification must be a result of that court's failure to give sufficient weight to the fairness objective of maintenance. As the fairness objective applies in every case, according to Rohde-Giovanni, it must be applied even in cases involving postdivorce judgments, such as this.

¶ 22. Rohde-Giovanni asserts that the factors used by Judge Feidler to adjust the maintenance were already recognized by Judge Steingass at the time she awarded indefinite maintenance; thus, reduction and eventual termination of maintenance was unwarranted in this case. Moreover, Rohde-Giovanni contends that the expenses she incurs for assisting her adult son with his education should be included within her projected budget. While recognizing that this court cannot order Baumgart to pay his adult children's expenses, Rohde-Giovanni states that she should not be penalized for choosing to spend her discretionary funds in such a way that benefits her adult children. Further, Rohde-Giovanni notes that supporting their children's educational goals was something both parties believed in during the marriage, and they would have contributed to their children's expenses in this manner had their marriage remained intact.

¶ 23. Baumgart agrees with Rohde-Giovanni's statement of the requisite standard in order to modify maintenance, including the "unjust or inequitable" facet, but states that modification was justified in this case because he satisfied the standard. Baumgart further agrees that the fairness objective applies during modifications of maintenance awards. Baumgart also agrees with Rohde-Giovanni that this standard applies, regardless of whether the original maintenance award was stipulated to or contested by the parties.

¶ 24. However, Baumgart disagrees with Rohde-Giovanni's assertion that the fairness objective was disregarded in this case, as Rohde-Giovanni is capable of living at the marital standard without maintenance. Baumgart states that Rohde-Giovanni is not entitled to maintenance in an amount that would put her above the marital standard of living. Baumgart also contends

that Judge Fiedler did not ignore the findings of fact made by Judge Steingass at the time of the divorce. Instead, Baumgart cites the fact that Rohde-Giovanni well exceeded her projected income, as a basis for the modification he requested.

¶ 25. According to Baumgart, he is not required to provide Rohde-Giovanni with a lifestyle higher than that enjoyed during marriage, simply because he earns more money now than when they were married. Baumgart notes that, even though his salary is higher now than when the parties were first divorced, he has taken a $20,000 pay cut in the last four years. Conversely, Baumgart argues that Rohde-Giovanni's salary has significantly increased since the divorce. Moreover, Baumgart suggests that Rohde-Giovanni's difficulty in meeting her monthly budget is a result of her own poor financial decisions. Baumgart argues that he should not be required to finance Rohde-Giovanni's decisions to let an adult friend, and at least one adult child, live with her rent free, and pay for all of her adult son's education, car, and other living expenses. Baumgart notes that the record demonstrates that Rohde-Giovanni has significant savings such as approximately $80,000 in stocks, over $70,000 in a money market account, and $5000 cash received from an inheritance. Although Rohde-Giovanni has other consumer debts, Baumgart argues that she could pay off these debts with her liquid assets, but chooses not to.

¶ 26. Finally, Baumgart asserts that maintenance law precludes consideration of a payee's expenses in relation to an adult child's education expenses. Baumgart contends that the child support statutes state that he is not required to provide child support to an adult child. Moreover, Baumgart states that the parties never formally agreed to contribute to their adult children's

616

educational expenses; thus, if he contributes to these expenses it should be of his own volition, not as mandated through a maintenance award.

¶ 27. We conclude that, in the present case, there was sufficient evidence from which the circuit court that modified the maintenance order could reasonably find a substantial change in the parties' circumstances, such that modification of maintenance was appropriate.

¶ 28. Wisconsin Stat. § 767.26 sets out numerous factors for circuit courts to consider when deciding the issue of maintenance. These factors cover a broad range of considerations, from the length of the marriage to the feasibility that the party seeking maintenance will be capable of supporting himself or herself at the marital standard of living. Section 767.26 further states that the court may consider other factors it deems relevant in determining whether, and for what duration, a party is entitled to maintenance. While some of these factors clearly focus on the financial needs of the recipient spouse, other factors appear to recognize a spouse's non-financial contribution to the marriage.

¶ 29. The factors listed in Wis. Stat. § 767.26 are designed to further two distinct goals with respect to maintenance. First, maintenance is designed to support the recipient spouse in accordance with the needs and earning capacities of both the recipient spouse and the payor spouse. *In re Marriage of LaRocque,* 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987). Second, a maintenance award must ensure that there is a fair and equitable financial arrangement between the parties. *Id.* The factors listed in § 767.26 must be considered in light of

617

these objectives when the circuit court is setting the amount of the maintenance award. *King,* 224 Wis. 2d at 249.

¶ 30. Although a maintenance award may be appropriate at the time of the divorce, the parties' circumstances may change and the award may need to be modified. Wisconsin Stat. § 767.32(1)(a)[4] provides for the subsequent modification of maintenance payments made under Wis. Stat. § 767.26. In order to modify a maintenance award, the party seeking modification must demonstrate that there has been a substantial change in circumstances warranting the proposed modification. *Fobes v. Fobes,* 124 Wis. 2d 72, 81, 368

---

[4] Wisconsin Stat. § 767.32(1)(a) provides in relevant part:

After a judgment or order providing for ... maintenance payments under s. 767.26 ... the court may, from time to time, on the petition, motion or order to show cause of either of the parties, ... revise and alter such judgment or order respecting the amount of such maintenance or child support and the payment thereof, and also respecting the appropriation and payment of the principal and income of the property so held in trust, and may make any judgment or order respecting any of the matters that such court might have made in the original action, except that a judgment or order that waives maintenance payments for either party shall not thereafter be revised or altered in that respect nor shall the provisions of a judgment or order with respect to final division of property be subject to revision or modification. A revision, under this section, of a judgment or order with respect to an amount of child or family support may be made only upon a finding of a substantial change in circumstances. In any action under this section to revise a judgment or order with respect to maintenance payments, a substantial change in the cost of living by either party or as measured by the federal bureau of labor statistics may be sufficient to justify a revision of judgment or order with respect to the amount of maintenance, except that a change in an obligor's cost of living is not in itself sufficient if payments are expressed as a percentage of income.

N.W.2d 643 (1985). We note that, in these circumstances, the focus should be on any financial changes the parties have experienced. *In re Marriage of Johnson v. Johnson,* 217 Wis. 2d 124, 127, 576 N.W.2d 585 (Ct. App. 1998) (*Johnson I*); *In re Marriage of Gerrits v. Gerrits,* 167 Wis. 2d 429, 437, 482 N.W.2d 134 (Ct. App. 1992). We note that the parties in *Johnson I* and *Fobes* entered into a stipulation regarding maintenance, while the circuit court made the decision regarding maintenance in the *Gerrits* case. Regardless of whether there has been a stipulation by the parties or a contest resulting in a judgment awarding maintenance, the applicable standards for maintenance modification remain the same. The parties in the present case agreed that such standards, involving a substantial change in circumstances, and an evaluation of support and fairness factors, must be applied in either case. The case law certainly supports that conclusion. *LaRocque,* 139 Wis. 2d at 32–33.

¶ 31. While a change in circumstances regarding the support objective of maintenance frequently gives rise to parties' motions for modification, it is important to note that a court reviewing a previous award of maintenance must not solely limit its inquiry to the support objective. The objective of fairness also must be considered, even in postdivorce proceedings. Fairness must be considered with respect to the situations of both parties in determining whether maintenance should be continued indefinitely, continued for a limited amount of time, reduced, or terminated. In *Johnson I,* the court of appeals reached the opposite conclusion, stating that the " 'fairness objective' does not apply to a postdivorce situation. Rather, the 'fairness objective' is a factor focusing on noneconomic contributions made by

the spouses " 'during the marriage." '" *Johnson I,* 217 Wis. 2d at 128 (citations omitted). We disagree with that court's conclusion that the fairness objective does not apply to postdivorce modifications of maintenance and withdraw any language that reflects that premise.

¶ 32. We recognize that this court has, on occasion, used the terms "unjust" and "inequitable," when considering whether there has been a substantial change in circumstances, such that the maintenance award should be modified. *Miner v. Miner,* 10 Wis. 2d 438, 441–42, 103 N.W.2d 4 (1960) (" '(T)he substantial or material change in the circumstances should be such that it would be unjust or inequitable to strictly hold either party to the judgment.' ") (citation omitted). *See also Fobes,* 124 Wis. 2d at 81. However, we emphasize that we have moved away from those terms and that the correct test regarding modification of maintenance should consider fairness to both of the parties under all of the circumstances, not whether it is unjust or inequitable to alter the original maintenance award.[5] *See LaRocque,* 139 Wis. 2d at 33, and *Hefty,* 172 Wis. 2d at 136. The unjust or inequitable standard is qualitatively different than the fairness standard, since it seems, in practice, to focus primarily on a single party. We conclude that the fairness standard is the better approach, since there the focus should be on what is fair to both parties, not just one party.[6]

---

[5] Contrary to the dissent's assertion, we have not created a new standard governing maintenance modification. *See dissent,* ¶ 57. Instead, we are simply clarifying the already existing standard, which recognizes that both support and fairness considerations must be weighed when determining whether to modify a maintenance award.

[6] Although the dissent contends that an unjust or inequitable standard would take into account both parties' circum-

¶ 33. We further note that a judge who reviews a request to modify a maintenance award should adhere to the findings of fact made by the circuit court that handled the parties' divorce proceedings. As stated by this court in *Van Gorder v. Van Gorder:*

> "The court's power to modify the provisions of the judgment of divorce is not the power to grant a new trial or to re-try the issues determined by the original hearing, but only to adapt the decree to some distinct and definite change in the financial circumstances of the parties or children."

*Van Gorder v. Van Gorder,* 110 Wis. 2d 188, 195, 327 N.W.2d 674 (1983) (citing *Thies v. MacDonald,* 51 Wis. 2d 296, 302, 187 N.W.2d 186 (1971)).

¶ 34. Where there is a substantial change in circumstances, the circuit judge reviewing the request for modification must adhere to this abovementioned principle and recognize the facts as they were at the time of the divorce. More specifically, the circuit court deciding the modification motion may not modify a maintenance award based solely on the fact that, had the parties been before it for their divorce action, that court would have

---

stances, we cannot agree. *See dissent,* ¶ 56. In fact, Rohde-Giovanni's counsel, Linda Roberson, belied this fact at oral argument when she made the following statement:

> I believe that, in any case where on the record a maintenance payor can show that it would be unjust or inequitable to continue the prior court's order of maintenance, a modification court has the authority to change the maintenance award. I don't believe that that standard was met in this case. I don't believe that any reasonable court on the record that we have here could find that it was *unjust or inequitable to Paul to continue the maintenance amount.* (Emphasis added.)

decided the matter differently. The findings of fact made by the original divorce court properly may be reviewed by the modification judge in the light of substantial changes in the parties' circumstances, and we anticipate that the modification judge will need to consider additional facts that were not before the original divorce court because of the substantial changes that have occurred.

¶ 35. Whether or not the parties have children may also interject unique issues that the circuit court must consider when determining the appropriate maintenance award. This is especially true in situations where the children have reached the age of majority, yet one or both of the parties seeks to provide continuing financial support to an adult child or children. As an initial matter, it is important to note that Wisconsin law is clear: Under Wis. Stat. § 767.25(4),[7] a court cannot order child support payments for children that have reached the age of majority, unless the very specific criteria in the statute are satisfied. Nevertheless, parents may want to continue to provide financial support to their adult children, including assisting in their adult children's education expenses. Parties may project that a sizeable amount of their monthly budgets may be used toward assisting adult children with such expenses. Given these circumstances, it may be difficult for a court to decide whether such expenses should be factored into the parties' monthly budgets for purposes of determining an appropriate maintenance award.

---

[7] Wis. Stat. § 767.25(4) states the following:

The court shall order either party or both to pay for the support of any child of the parties who is less than 18 years old, or any child of the parties who is less than 19 years old if the child is pursuing an accredited course of instruction leading to the acquisition of a high school diploma or its equivalent.

¶ 36. Although the issue of whether education expenses for adult children may be considered when a court examines a party's maintenance award never has been squarely before this court, the court of appeals has previously had the opportunity to address this issue. In *Dahlke v. Dahlke,* the court of appeals noted that parties had no legal obligation to pay for their adult children's education expenses and could not be ordered to do so by the court. *Dahlke v. Dahlke,* 2002 WI App 282, ¶¶ 14, 22, 258 Wis. 2d 764, 654 N.W.2d 73. The circuit judge in that case concluded that the education expenses in the parties' budgets were legitimate, but these expenses did not ultimately influence the judge's decision regarding maintenance.

¶ 37. In *Resong v. Vier,* the court of appeals concluded that the circuit court erred in considering a minor child's future post-high school education expenses for purposes of determining an appropriate child support award. *In re Marriage of Resong v. Vier,* 157 Wis. 2d 382, 388, 459 N.W.2d 591 (Ct. App. 1990). The court noted that "although there may be strong reasons or even a moral responsibility to do so, the law does not require any parent to support his or her adult children. . . . Although parents should take an interest in their children's education beyond high school, we cannot dictate that they do so." *Id.* at 391. While there are different considerations when dealing with child support versus maintenance awards, we note that a similar theme runs through both of these areas of family law: a parent cannot be required to provide financial support to adult children for their education expenses.

¶ 38. We conclude that education expenses for an adult child do not have to be considered by the modifying court when examining a party's budget, but they

can be. This is a discretionary decision that should be left to the circuit court. As noted above, courts recognize that assisting adult children with their education expenses is a worthwhile and laudable endeavor. Nevertheless, we do not want to open a Pandora's box where payors could seek to reduce the amount of maintenance paid to recipients simply because the payors are making sizeable contributions to their adult children's education expenses. We feel compelled to emphasize that it will be the rare situation when these expenses should be considered. Thus, we leave the decision of whether or not to consider such expenses when determining maintenance awards for the circuit courts to decide in the exercise of sound discretion, subject to appellate review on an erroneous exercise of discretion basis. While we do not anticipate a frequent need to consider such expenses, we recognize that unusual circumstances could justify such consideration.

¶ 39. After examining the record, we conclude that the circuit court did not erroneously exercise its discretion in modifying the maintenance award in this case. We conclude that, in the present case, the circuit court could reasonably find that there had been a substantial change in the parties' circumstances. Moreover, Judge Fiedler considered both the amount of maintenance, if any, necessary for both parties to live within their budgets, and the fairness for both parties of a limited maintenance award, when reaching his decision.

¶ 40. The record contains sufficient evidence from which Judge Fiedler could have concluded that modification of maintenance was appropriate. At the time Judge Steingass entered the divorce judgment, Rohde-Giovanni was in the middle of completing an undergraduate degree program. At the time of the modifica-

tion, Rohde-Giovanni had completed the degree program she was pursuing at the time of divorce, and, in addition, she had obtained a Master's Degree in special education. Moreover, although Judge Steingass anticipated that Rohde-Giovanni's earning capacity would increase over the years, her current income far surpassed her projected income at the time of the divorce.

¶ 41. At the time of the divorce, Rohde-Giovanni earned $8808 per year as a part-time counselor. Rohde-Giovanni projected that she could earn between $22,000 to $28,000 as a teacher, with a maximum earning capacity of $40,000 approximately 15 years later. At the time of the modification, Rohde-Giovanni earned approximately $61,000 per year. In the divorce judgment, the circuit judge noted that the maintenance determination was based upon a number of assumptions, such as the amount of the child support award and the fact that Rohde-Giovanni was in school. The circuit judge who granted the divorce further noted that her analysis would become outdated once Rohde-Giovanni had earned her degree and begun earning in accordance with her capacity. At the time of the modification, Rohde-Giovanni not only finished her degree, but she surpassed the estimates of her earning capacity by a significant amount. Further, the record demonstrates that Rohde-Giovanni has significant reserve assets as well. At the hearing before Judge Fiedler, Rohde-Giovanni testified that she had approximately $80,000 in stocks, over $70,000 in a money market account, and $5000 cash from an inheritance.

¶ 42. Rohde-Giovanni contended that she was dependent upon Baumgart's maintenance payments and would be unable to meet her monthly budget without it.

625

Rohde-Giovanni testified that the marital home is now in a "deteriorated" condition because she is unable to afford the necessary repairs. She also testified that she has some consumer debt, but conceded that she could pay off that debt with the significant amount of money she had saved. Baumgart did not contest the fact that Rohde-Giovanni has consumer debt or that her home may need repairs. However, he pointed out that, as affirmed by her own testimony, Rohde-Giovanni has taken several vacations since the divorce. Baumgart also suggests that Rohde-Giovanni has made several other choices that may have negatively impacted her financial situation, such as allowing an adult friend live with her rent-free, allowing an adult son live with her rent-free, and devoting over $900 per month to an adult son's education and other living expenses. Baumgart contends that, in accordance with *Murray v. Murray,* a payor should not be required to finance imprudent financial decisions made by the recipient spouse. *In re Marriage of Murray v. Murray,* 231 Wis. 2d 71, 82, 604 N.W.2d 912 (Ct. App. 1999).

¶ 43. It is ultimately Rohde-Giovanni's decision as to how best to use her income, and we do not suggest that she should spend it differently. Nevertheless, we conclude that Judge Fiedler did not err when he stated that some problems Rohde-Giovanni was experiencing in trying to meet her budget could be alleviated if she scaled back some of her monthly expenditures.

¶ 44. We disagree with Rohde-Giovanni's assertion that *Hefty* involved the same circumstances as presented in this case. In *Hefty,* the circuit court took into account the fact that the husband's postdivorce salary more than doubled, in comparison to his salary during the marriage, in deciding the appropriate maintenance award. *Hefty,* 172 Wis. 2d at 129. We noted that

the parties likely anticipated the substantial increase in income given the husband's promotion to president of a major corporation. *Id.* at 135. We stated that the *Hefty* case only applied to couples who could anticipate such "marked fluctuations in income." *Id.*

¶ 45. The circumstances in this case can be distinguished from the facts in *Hefty.* Although Baumgart's income has increased since the divorce, he has recently taken a paycut of $20,000 in the past four years. Baumgart's position was eliminated at his former company, and he moved out of the state for another job. Ultimately, Baumgart decided to move back to Wisconsin, and he accepted a job at which he grosses approximately $104,000 per year. This overall increase in income from $93,000 at the time of the divorce to about $104,000 now is slight when compared with the amount Rohde-Giovanni's income has increased since the divorce. Simply because there has been a marginal increase in Baumgart's salary does not mean that Rohde-Giovanni is entitled to share in that amount. *See Murray,* 231 Wis. 2d at 83; *In re Marriage of Johnson v. Johnson,* 225 Wis. 2d 513, 519, 593 N.W.2d 827 (Ct. App. 1999) (*Johnson II*). We also agree with Judge Fiedler's comment that, although Baumgart had the benefit of his current wife's income, the court could not make Baumgart's current wife finance Rohde-Giovanni's financial decisions. Rohde-Giovanni is earning far beyond the salary projected at the time of divorce, and it was not unreasonable for the court to decide that maintenance should be terminated after two more years.

¶ 46. Finally, we conclude that Judge Fiedler did not err when he decided not to consider Rohde-Giovanni's contribution to her adult son's education

expenses when deciding to grant limited term maintenance. As noted previously, there may be unusual situations where consideration of a party's contribution toward an adult child's education expenses is appropriate with respect to maintenance modification. However, this is not such a case. There was not a formal agreement between Baumgart and Rohde-Giovanni that they would contribute to an adult child's education expenses. Thus, Rohde-Giovanni was unable to provide evidence that financing their adult child's educational pursuits was part of the marital standard of living the couple would have enjoyed had the marriage remained intact. Had such an agreement been present, the circuit judge could have, but was not required to, consider this fact when determining maintenance. In this case, each party is entitled to provide financial support for an adult child's education expenses in a manner that each sees fit. Nevertheless, we conclude that Baumgart cannot be forced to contribute towards his adult son's expenses through maintenance payments to Rohde-Giovanni and that the modification judge was not in error when he reached that conclusion.

### III

¶ 47. In sum, we conclude that there was sufficient evidence from which the circuit court could reasonably find a substantial change in the parties' circumstances, and from which the court could conclude that such circumstances justified the termination of maintenance after two more years. The test for whether there is a substantial change in circumstances is the same, regardless of whether or not the issue of maintenance was stipulated to or contested during the divorce proceedings. The objectives of support and fairness must both be considered on the issue of modification of

a maintenance award as well, whether there was a stipulation or a contest in the original proceedings. Moreover, we conclude that educational expenses a party incurs on behalf of an adult child may, but do not have to be, considered when examining the party's budget. This is a decision left to the sound discretion of the circuit court. While we do not anticipate frequent consideration of such educational expenses, we recognize that unusual or extraordinary circumstances could justify such consideration.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 48. PATIENCE D. ROGGENSACK, J., did not participate.

¶ 49. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I agree with much of the majority opinion. I agree that the test for whether a substantial change in circumstances has occurred is the same regardless of whether the original maintenance order resulted from a stipulation or from a contested hearing.[1] I agree that expenses incurred for an adult child's post-secondary education may properly be considered in a party's budget in a maintenance award.[2] I agree that the fairness objective is applicable in a postdivorce maintenance modification case and that any language to the contrary in any case should be withdrawn.[3]

¶ 50. I write separately for three reasons: (1) the majority opinion unnecessarily muddies the already

---

[1] Majority op., ¶ 30.

[2] Majority op., ¶ 38.

[3] *See* majority op., ¶ 31 (withdrawing language from *Johnson v. Johnson,* 217 Wis. 2d 124, 576 N.W.2d 585 (Ct. App. 1998) (*Johnson I*), suggesting that postdivorce maintenance modification cases are not subject to the fairness standard).

unclear waters of maintenance modification by setting forth what purports to be a different standard than the courts have used in past modification cases; (2) a circuit court should use great care before excluding expenses for an adult child's post-secondary education; and (3) I disagree with the majority opinion that the circuit court properly exercised its discretion in this case when it terminated the indefinite maintenance award.

I

¶ 51. The majority opinion correctly states that the threshold test used in past maintenance modification decisions has been to determine whether there has been a substantial change in the parties' circumstances " 'such that it would be unjust or inequitable to strictly hold either party to the judgment.' "[4] The majority opinion then proceeds in the text of the opinion, in contrast to a footnote comment,[5] to "emphasize that we have moved away from those terms ['unjust' and 'inequitable']" and adopts a new "correct" test for determining whether to modify a maintenance award, holding that courts must consider the "fairness [of a modification] to both of the parties under all of the circumstances."[6]

¶ 52. The majority opinion cites two cases in support of this proposition, neither of which supports its claim. *Hefty v. Hefty,* 172 Wis. 2d 124, 493 N.W.2d 33

[4] Majority op., ¶ 32 (quoting *Miner v. Miner,* 10 Wis. 2d 438, 441–42, 103 N.W.2d 4 (1960)). *See also Van Gorder v. Van Gorder,* 110 Wis. 2d 188, 195, 327 N.W.2d 674 (1983); *Moore v. Moore,* 89 Wis. 2d 665, 699, 278 N.W.2d 881 (1979); *Murray v. Murray,* 231 Wis. 2d 71, 74, 604 N.W.2d 912 (Ct. App. 1999).

[5] *See* majority op., ¶ 32 n.5.

[6] Majority op., ¶ 32; *see also* majority op., ¶ 32 n.6.

(1992), is not a modification case and therefore not relevant. Although *LaRocque v. LaRocque,* 139 Wis. 2d 23, 406 N.W.2d 736 (1987), did involve both an initial maintenance determination and a modification, the case does not discuss the standard for modification but merely makes clear that maintenance has both support and fairness objectives.[7]

¶ 53. The majority opinion's apparent attempt to distinguish between an order that is "unjust or inequitable" and one that is "unfair" forges a semantic distinction without a difference. The words "just," "equitable," and "fair" are commonly understood to be synonyms.[8] The majority opinion states that the "unjust or inequitable" standard is "qualitatively different than the fairness standard, since it seems, in practice, to focus primarily on a single party," while the fairness standard focuses on both parties.[9]

¶ 54. The majority opinion's reasoning fails for several reasons. First, the majority opinion cites no cases in which the unjust or inequitable standard resulted in a circuit court's focusing on only one party instead of on both parties. The majority opinion instead focuses on a statement made by Rohde-Giovanni's counsel at oral argument, in which she argued that no reasonable court could find on the record of the present case that it would be unjust or inequitable for Baum-

---

[7] *LaRocque v. LaRocque,* 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987)

[8] The *American Heritage Dictionary of the English Language* 622, 655, 979 (3d ed. 1992), defines "just" as "[h]onorable and fair in one's dealings and actions ... See [s]ynonyms at fair." "Equitable" is defined as "[m]arked by or having equity; just and impartial." "Fair" is defined as "[j]ust to all parties; equitable."

[9] Majority op., ¶ 32.

gart to continue paying the maintenance amount ordered at the time of the divorce.[10] The majority opinion does not explain how a single statement from oral argument, read in isolation, leads to the conclusion it appears to reach—that the "unjust or inequitable" standard, in practice, has been improperly applied by the courts and has resulted in some sort of unfairness.

¶ 55. Second, the cases using the phrase "unjust or inequitable" in maintenance modification situations explicitly state that the court should examine the circumstances of both parties: "the substantial or material change in the circumstances should be such that it would be unjust or inequitable to strictly hold *either party* to the judgment."[11]

¶ 56. Third, an "unjust or inequitable" analysis necessarily requires a court to evaluate the circumstances of both parties. It would be impossible to look only at a maintenance payor's circumstances, or only at a maintenance recipient's circumstances, and determine whether the maintenance order was unjust or inequitable.

¶ 57. I see no reason to add to the confusion surrounding the proper standard to be applied in maintenance modification by announcing a "new" standard that is actually no different from the established standard.[12]

---

[10] Majority op., ¶ 32 n.6.

[11] *Fobes v. Fobes,* 124 Wis. 2d 72, 81, 368 N.W.2d 643 (1985); *Moore v. Moore,* 89 Wis. 2d 665, 669, 278 N.W.2d 881 (1979) (emphasis added).

[12] For the court of appeals' discussion of the confusing law, see *Rohde-Giovanni v. Baumgart,* 2003 WI App 136, ¶ 7 n.1, 266 Wis. 2d 339, 667 N.W.2d 718 (case law on maintenance is not a paragon of clarity).

## II

¶ 58. Although I agree with the majority opinion's conclusion that a court may, in an appropriate case, consider expenses incurred for an adult child's education in a party's budget when modifying a maintenance award, I would advise circuit courts to use great care before excluding such expenses.

¶ 59. The majority opinion concludes that the circuit court properly excluded those expenses from Rohde-Giovanni's budget because the parties had not formally agreed to pay for their children's education beyond age 18. A formal agreement is not always necessary, however.

¶ 60. An analysis of a maintenance award addresses the marital standard of living prior to the divorce and the standard of living the parties "could anticipate enjoying if they stayed married."[13] The standard of living, including the family's income, educational background, and aspirations, may very well include an adult child's post-secondary education. I agree with Rohde-Giovanni that even if courts cannot order parties to pay for the education of adult children,

> [i]t cannot be disputed that contributions to an adult child pursuing post-secondary education are part of the lifestyle that many couples enjoy in years leading up to a divorce or would have anticipated enjoying had they remained married. Thus, given the right facts, expenses for an adult child pursuing post-secondary education may be an integral part of the marital standard

---

[13] *Hefty v. Hefty,* 172 Wis. 2d 124, 134, 493 N.W.2d 33 (1992).

of living or anticipated standard of living and therefore a proper consideration in an maintenance determination.[14]

¶ 61. It is significant that the purpose of a maintenance award is to allocate disposable income fairly between the parties and not to direct the manner in which each party spends discretionary funds. No prior case law restricts a spouse from making reasonable and legitimate discretionary expenditures consistent with the parties' marital standard of living.

¶ 62. The court of appeals' decision in this case acknowledged that its conclusion to consider Rohde-Giovanni's payments for her adult child's post-secondary education expenses differently from its consideration of other discretionary expenses, like vacations, hobbies, or charitable contributions,[15] presented a "curious juxtaposition."[16] Oddly, however, although the court of appeals did not consider negatively the maintenance payor's large budget for clothing, travel, and hobbies, it did consider negatively the maintenance recipient's expenditures for her adult children. I agree that its decision on this issue is problematic. The circuit court should, in my opinion, reexamine this issue on remand.

---

[14] Brief and Appendix of Petitioner-Appellant-Petitioner at 34–35. For cases considering an adult child's college expenses in the parties' budgets and in maintenance awards, see *Finley v. Finley*, 2002 WI App 144, ¶ 30, 256 Wis. 2d 508, 648 N.W.2d 536; *Hubert v. Hubert*, 159 Wis. 2d 803, 820, 465 N.W.2d 252 (Ct. App. 1990).

[15] *Rohde-Giovanni*, 266 Wis. 2d 339, ¶ 12.

[16] *Id.*, ¶ 17 n.5.

## III

¶ 63. Finally, I dissent because I conclude that the circuit court's termination of the maintenance award after two years was an erroneous exercise of discretion.

¶ 64. The appropriate standard of review in evaluating whether a circuit court properly terminated an indefinite maintenance award is whether the circuit court erroneously exercised its discretion. This court has often said that "a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purposes of achieving a reasonable determination."[17] An appellate court will affirm a circuit court's discretionary decision as long as the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."[18] Therefore, the record on appeal must "reflect the circuit court's reasoned application of the appropriate legal standard to the relevant facts in the case."[19] "If a judge bases the exercise of his discretion upon an error of law, his conduct is beyond the limits of discretion."[20]

---

[17] *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

[18] *Long v. Long,* 196 Wis. 2d 691, 695, 539 N.W.2d 462 (Ct. App. 1995). *See also State ex rel. M.L.B. v. D.G.H.,* 122 Wis. 2d 536, 541, 363 N.W.2d 419 (1985); *Shuput v. Lauer,* 109 Wis. 2d 164, 177–78, 325 N.W.2d 321 (1982).

[19] *State v. Delgado,* 223 Wis. 2d 270, 281, 588 N.W.2d 1 (1999).

[20] *State v. Hutnik* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968); *see also In re Settlement for Personal Injuries of Konicki* 186 Wis. 2d 140, 150, 519 N.W.2d 723 (Ct. App. 1994) ("[A] trial

¶ 65. According to our case law, a circuit court should consider three factors in granting limited maintenance: (1) the ability of the recipient spouse to become self-supporting at a standard of living similar to that enjoyed before the divorce; (2) the ability of the payor spouse to continue the obligation of support for an indefinite time; and (3) the need for the court to continue jurisdiction regarding maintenance.[21] The circuit court and court of appeals only considered the first factor in this case: whether Rohde-Giovanni would be self-supporting at the marital standard.

¶ 66. Because the circuit court failed to consider the second two factors in this case, I cannot agree that it properly exercised its discretion. However, even to the extent that the circuit court did consider the first factor, I conclude that it erred in doing so.

¶ 67. The record shows that even if the expenditures for the parties' adult child's education are excluded from Rohde-Giovanni's budget, she still cannot meet the marital standard of living as it existed at the time of divorce, let alone the standard of living that the parties would have enjoyed if they had remained married, she had obtained a degree, and his salary continued to rise.

¶ 68. The circuit court's conclusion that Rohde-Giovanni could achieve the marital standard of living without maintenance if she eliminated financial sup-

court erroneously exercises its discretion when its decision is based on a misapplication or erroneous view of the law.").

[21] *Bentz v. Bentz,* 148 Wis. 2d 400, 406, 435 N.W.2d 293 (Ct. App. 1988).

port for her adult children[22] is clearly erroneous. The marital standard of living is properly updated by taking Rohde-Giovanni's budget at the time of divorce, subtracting from it the expenditures she made on the couple's children, and multiplying the result by 26.33%, the cost of living multiplier stipulated to by the parties.[23] Performing these calculations yields the following results:

$$5149.56 \text{ (budget at divorce)}[24]$$

$$-2078.75 \text{ (amount spent on adult and minor children)}[25]$$

$$\overline{3070.81}$$

$$\text{x } .2633 \text{ (cost of living multiplier)}[26]$$

$$\overline{808.54}$$

$$+3070.81$$

$$\overline{\$3879.35 \text{ (updated marital standard of living)}}$$

¶ 69. Rohde-Giovanni's total gross monthly income from her full-time teaching job and her part-time counselor job at the time of the modification hearing was $4834.96.[27] Her net monthly income from both jobs was $3596.60, precisely $282.75 per month less than the standard she enjoyed at the time of divorce.

---

[22] *See* Brief and Appendix of Petitioner-Appellant-Petitioner at B29 (Transcript of Judge Patrick J. Fiedler's Oral Decision of October 8, 2001).

[23] *See* R. 45 at 172.

[24] *See* R. 17–2, ex. 1.

[25] *See id.*

[26] *See* R. 45 at 172.

[27] *See* R. 41–2, ex. 14 (Wife's Financial Disclosure Statement).

¶ 70. Rohde-Giovanni asserts that she was required to liquidate retirement assets to pay for routine living expenses, cannot afford repairs to her home, has had to work two jobs to support herself, and cannot meet her monthly budget. All of this she has done to the detriment of her health, which was in a fragile condition at the time of her divorce. The circuit court commented that if Ms. Rohde-Giovanni "tighten[ed] up [her] budget" she would be living at the marital standard, but the record belies this conclusion.[28] Even if Ms. Rohde-Giovanni "tightened" her budget, she is still worse off in real dollars than she was on the day of the divorce. These circumstances have to be considered in modifying maintenance.

¶ 71. The circuit court, the court of appeals, and the majority opinion ignore the ex-husband's income, expenses, and higher standard of living, his increased ability to pay maintenance after his child support was reduced, and his ex-wife's contributions to the marriage and care of the children. In applying the fairness test, the circuit court and court of appeals failed to consider the same statutory factors that govern the initial determination of maintenance.[29] They ignored the ex-husband's increase in income and decrease in expenses as well as the noneconomic contributions of both parties. The fairness test focuses not only on the economic circumstances of the parties but also on the noneco-

[28] The court of appeals complains that the factual record is flawed. It does not, however, determine which party has the burden of proof or explain what additional evidence was needed. *Rohde-Giovanni,* 266 Wis. 2d 339, ¶ 24 n.6.

[29] The statutory factors are set forth in Wis. Stat. § 767.26 (1999–2000). *See, e.g., Poindexter v. Poindexter,* 142 Wis. 2d 517, 531–32, 419 N.W.2d 223 (1988); *Van Gorder v. Van Gorder,* 110 Wis. 2d 188, 198, 327 N.W.2d 674 (1982).

nomic contributions made by the spouses during the marriage.[30] During the 19–year marriage Rohde-Giovanni was primarily responsible for the care of the four children while Mr. Baumgart pursued his career development and provided financial support. After the divorce she continued to be the primary caregiver for the children. Her many years of contributing to the domestic responsibilities, as the initial circuit court found, permanently affected her ability to generate income.

¶ 72. If the majority opinion has considered, as it claims to have done, the "fairness to both of the parties under all of the circumstances," why isn't there any real discussion of the husband's circumstances? The majority opinion's failure to look with the same intensity at both parties skews the outcome of this action in favor of the ex-husband.

¶ 73. The unfortunate effect of the majority opinion is to penalize a spouse who improves her own earning ability and reduces her expenses to help an adult child achieve post-secondary education. How can that be the result of a proper exercise of discretion?

¶ 74. I conclude that because the circuit court erroneously exercised its discretion, "the correct course of action is to reverse the award and remand the case to the circuit court,"[31] to reinstate the indefinite maintenance, and to set an amount of maintenance that is consistent with both the support and fairness objectives of maintenance modification.

¶ 75. For the reasons set forth, I dissent.

[30] *LaRocque,* 139 Wis. 2d at 37–38.

[31] *King v. King,* 224 Wis. 2d 235, 254, 590 N.W.2d 480 (1999).

¶ 76. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.