**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 25, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2022**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018FA27**

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE MARRIAGE OF:

HERBERT LEE CODY, JR.,

    PETITIONER-APPELLANT,

  V.

DAWN MARIE CODY,

    RESPONDENT-RESPONDENT.

      APPEAL from a judgment of the circuit court for Lafayette County: DUANE M. JORGENSON, Judge. *Affirmed*.

      Before Fitzpatrick, P.J., Graham, and Nashold, JJ.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Herbert Cody appeals a circuit court judgment of divorce.  The issue is whether the circuit court erroneously exercised its discretion in ordering Herbert to pay maintenance to Dawn Cody.[1]   We conclude that the circuit court reasonably exercised its discretion.  Accordingly, we affirm.

## *Background*

¶2    Herbert and Dawn were married in 2001 and did not have any children together.  Herbert filed a petition for divorce on May 23, 2018.  Both parties were in their fifties at the time of divorce.

¶3    The parties both entered into the marriage with existing debt obligations.  Dawn had purchased a house in Hales Corners, Wisconsin, in 1998 and had a mortgage on the house.  During the marriage, the parties refinanced the house in both parties' names.  The parties resided together there until January 2014, when Herbert moved to Belmont, Wisconsin, for a job with QueenB Radio station.

¶4    After divorce proceedings were initiated in May of 2018, the parties sold the house in Hales Corners.  The proceeds from the sale of the house were used to pay off marital debt.  After the sale of the house, Dawn began renting a shared residence with her sister and another individual, where Dawn's share of the rent and utilities totaled about $500 per month.  Herbert remained in his apartment in Belmont, paying $380 in monthly rent in addition to utilities.

¶5    The parties entered into a stipulated agreement as to the division of their marital property and debts.  The circuit court held a trial on May 9, 2019, solely on the issue of maintenance.  After considering the testimony, documentary

---

[1]  Because the parties have the same last name, we refer to them by first names for clarity.

evidence and the record, the trial court found that Dawn's gross pay from her employment at Heartland Advisors was $76,100 annually, while Herbert's annual income from QueenB Radio was $94,760 without consideration of bonuses.[2] The court granted the parties their requested divorce and ordered Herbert to pay $950 in monthly maintenance to Dawn for five years. The court later entered written findings of fact and conclusions of law. Herbert filed a motion for reconsideration, which the circuit court denied in an oral ruling on October 9, 2019. This appeal follows.

### *Standard of Review*

¶6      An appellate court "will not disturb the circuit court's decision regarding maintenance unless the award represents an erroneous exercise of discretion." *Rohde-Giovanni v. Baumgart*, 2004 WI 27, ¶17, 269 Wis. 2d 598, 676 N.W.2d 452. "A circuit court engages in an erroneous exercise of discretion when it fails to consider relevant factors, bases its award on factual errors, makes an error of law, or grants an excessive or inadequate award." *Id.*, ¶18.

### *Discussion*

¶7      WISCONSIN STAT. § 767.56(1c) (2017-18)[3] lists a number of factors for a trial court to consider when determining the amount and duration of a maintenance award, including the length of the marriage, the age and health of the

---

[2] Dawn asserts in her respondent's brief that she "successfully moved to correct the record" to reflect her base salary as $70,000. The record does not support this assertion. The record reflects that Dawn informed the court by letter that the findings of fact, conclusions of law, and judgment for divorce should be corrected to show that her gross annual salary is $70,000, and not $76,100 as stated in the written findings of fact. The court addressed this request in its oral ruling on the reconsideration motion, and declined to disturb its written finding as to Dawn's salary.

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

parties, the property division, the parties' respective educational levels and earning capacities, the contributions of one party to the education or earning power of the other, and the standard of living enjoyed during the marriage. These factors

> are designed to further two distinct but related objectives in the award of maintenance: to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objective) and to ensure a fair and equitable financial arrangement between the parties in each individual case (the fairness objective).

*Laroque v. Laroque*, 139 Wis. 2d 23, 32-33, 406 N.W.2d 736 (1987).

¶8       Herbert argues on appeal that the circuit court erroneously exercised its discretion in awarding maintenance to Dawn. He argues that (1) Dawn's reason for requesting maintenance was so that she could work part-time and retire early; (2) Dawn misrepresented to the court that she needed a college degree to use her investment licenses to earn a more lucrative income; (3) the circuit court improperly considered the pre-marital value of the marital home; and (4) Dawn reneged on the parties' agreement to sell the marital home to pay off debt. For the reasons explained below, we reject each of these arguments.

¶9       We turn first to Herbert's argument that the circuit court erred in awarding maintenance to Dawn because, as phrased in the appellant's brief, her reason for requesting spousal support was so that she could work part-time or retire early. Herbert argues that, with most of the marital debt paid off and with Dawn electing to live with her sister, Dawn does not need maintenance to support herself. Herbert asserts that the maintenance payments will result in approximately $19,000 in annual discretionary income for Dawn to put away for an early retirement.

¶10       Dawn disputes Herbert's assertion that she does not need maintenance to support herself, and further disputes his assertion that she will be able to retire

early. She argues that the record does not support Herbert's assertion that, as a result of maintenance, she will be putting away $19,000 per year for retirement.

¶11 We agree with Dawn that the record does not support Herbert's assertion on this point. Herbert relies mainly upon trial testimony from Dawn that she had talked to her employer's human resources department and that she planned to put away "the maximum," or $19,000, into her 401K. However, as Dawn points out in her respondent's brief, her hope to make the maximum allowable pre-tax contribution to her 401K is not the same thing as actually being able to do so. Her financial disclosure statement shows a monthly deduction in the amount of only $583.34 for retirement savings, or approximately $7,000 annually. Dawn testified unequivocally at trial, based on her financial disclosure statement, that her total monthly expenses left her "in the negative" and that, even if she wanted to, there was no possibility for her to put away anything more toward her retirement. Dawn also testified that she did not anticipate being able to retire at age 65, let alone earlier.

¶12 In making its findings, the circuit court adopted the budget and income shown in Dawn's financial disclosure statement as an accurate showing of her needs for purposes of determining maintenance. Herbert does not argue in his appellant's brief that Dawn's financial disclosure statement or any of the information contained in it is inaccurate. In light of all of the above, we are satisfied that the record reflects a proper exercise of the circuit court's discretion in awarding maintenance to Dawn under WIS. STAT. § 767.56(1c), based upon the financial disclosure statements and the testimony and other evidence presented by the parties at trial.

¶13 Next, relevant to the issue of earning capacity under WIS. STAT. § 767.56(1c)(e), we address Herbert's argument that Dawn made a

misrepresentation to the court when she testified that she needed a college degree to use the Series 6, Series 63, and Series 65 securities licenses that she acquired at her employer's request. Herbert asserts that Dawn is not required under WIS. STAT. § 551.401 or under Financial Industry Regulatory Authority (FINRA) to have a college degree in order to sell investments or give financial advice; that only the relevant licenses in good standing are required.

¶14 Dawn counters that, although she is not aware of any regulation requiring a college degree to sell securities or provide advice under her FINRA licenses, as a practical matter neither her current employer nor any potential employer would hire her without a college degree. This position is consistent with Dawn's trial testimony. She testified that she acquired Series 6, 63, and 65 security licenses because her job required it. However, Dawn also testified that she currently works in marketing production and does not actually use the licenses. She testified that the licenses were obtained because, for the first year and a half after she started her employment at Heartland Advisors, Dawn worked in client services and had to have the ability to speak about products. Dawn testified that her licenses could give someone with a college degree a high earning capacity, but that she does not have a college degree. The circuit court heard all of the testimony regarding Dawn's education, licenses, and earning potential, and determined that Dawn was currently earning at capacity. The circuit court's determination is supported by the record and is not an erroneous exercise of discretion.

¶15 Next, we address Herbert's argument that the circuit court improperly considered the pre-marital value of the marital residence "in disregard of the husband's early joint tenancy and financial contributions over 18 years of marriage[.]" Herbert fails to develop his argument in the appellant's brief with any factual or legal citations, and we reject it on that basis. *See **State v. Pettit***, 171 Wis.

2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to review issues that are inadequately briefed).

¶16    Finally, Herbert asserts that he and Dawn agreed that they would pay off marital debt and leave the marriage without further financial obligation.  He argues that, by requesting maintenance, Dawn reneged on that agreement.  Herbert asserts that he was not aware that Dawn was going to ask for spousal maintenance until a court hearing in November of 2018, after the house had been sold and the debts paid off.  The record does not support Herbert's assertion on this point.  A response and counterclaim filed by Dawn on June 11, 2018, states explicitly that Dawn is requesting maintenance.  Moreover, Dawn asserts in her brief that she never agreed or stipulated to waive an award of maintenance.  Herbert did not file a reply brief disputing this assertion.  A proposition asserted by a respondent on appeal and not disputed by the appellant in the reply brief is taken as admitted.  *See **Schlieper v. DNR***, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994).  We reject Herbert's argument that Dawn waived maintenance or that she should be estopped from requesting it.

¶17    In sum, Herbert's arguments do not show an erroneous exercise of discretion.  In effect, Herbert is asking this court to view the evidence differently than the circuit court viewed it, with an emphasis on evidence that best supports his position.  That is not appropriate under our standard of review.  As our supreme court recognized, "a [circuit] court in an exercise of its discretion may reasonably reach a conclusion which another judge or another court may not reach[.]" ***Hartung v. Hartung***, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).  As discussed above, the circuit court considered relevant statutory factors and arrived at a decision which a reasonable judge could reach while properly considering the support and fairness objectives of maintenance.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.