In re the marriage of:

Bradley M. Brin, Petitioner-Respondent,

v.

Edith A. Brin, Respondent-Appellant.

Court of Appeals

*No. 2013AP1739. Submitted on briefs April 1, 2014.
—Decided May 13, 2013.*

2014 WI App 68

(Also reported in 849 N.W.2d 900.)

510

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Carlton D. Stansbury* and *Wyatt D. Dittburner* of *Burbach & Stansbury, S.C.,* of Milwaukee.

512

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas W. St. John* and *Joseph M. Peltz* of *Friebert, Finerty & St. John, S.C.*, of Milwaukee.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. CURLEY, P.J. Edith A. Brin appeals an order, entered following a hearing *de novo,* partially granting her former husband, Bradley Brin's, request to terminate maintenance. Rather than terminate maintenance, the trial court held it open as to Edith, but ended the family court commissioner's order that had required Bradley to pay $500 a month maintenance.[1] Edith contends that the trial court erroneously exercised its discretion when it reduced her maintenance to $0. Inasmuch as both parties were about seventy-nine years old at the time of the hearing; had been divorced for twenty-one years; were both living solely on their investment income and social security benefits; and Bradley had been paying maintenance for ten years after he retired; we are satisfied that the trial court properly exercised its discretion when it reduced Edith's maintenance to $0, finding that Edith had ample funds to support herself. Consequently, we affirm.

### BACKGROUND

¶ 2. The parties were married on September 2, 1956. They were divorced in Milwaukee County on February 13, 1992, ending their thirty-five-year marriage. At the time of the divorce, Bradley was making approximately $100,000 a year from his employment and had imputed income of $34,000 from investments.

---

[1] Inasmuch as the parties share the same last name, we will refer to them by their first names.

Edith was also working and had imputed annual gross income of $21,667 and investment income of $54,000. The marital settlement agreement stipulated to by the parties required Bradley to pay indefinite maintenance of $1750 a month to Edith. The parties divided up their sizable marital estate equally. Each had substantial other property not subject to division.

¶ 3. In June 1995, approximately three years after the divorce, Edith brought a motion to increase maintenance due to her having had cancer. The family court commissioner found that Edith had established a substantial change in circumstances due to her change in health, and found her unable to work. At the time of this hearing, Edith had $1,037,000 in cash assets. In addition, she had equity in her home and two IRA's valued at $475,725. Bradley's employment yielded $80,000 in income. He also had a retirement plan worth in the range of $350,000 to $400,000 and $546,000 in cash assets. In addition, Bradley had a home worth $225,000 and a share in the Brin Family Partnership worth $400,000. The family court commissioner increased the monthly maintenance payable by Bradley to $2333 starting at the end of June 1995. Bradley objected to this increase, and filed a motion for a *de novo* hearing in front of the trial court. Ultimately, the parties agreed to binding arbitration which was arbitrated by Attorney Thomas Bailey. Bailey determined that a 55/45 split of their income was appropriate and ordered Bradley to pay maintenance of $2500 per month to Edith.

¶ 4. On June 18, 2012, over twenty years from the day of their divorce, Bradley filed a motion seeking to terminate maintenance. On August 14, 2012, a family court commissioner issued an order in response to Bradley's motion. In the order, the family court commissioner acknowledged that Bradley had retired in 1999,

but refused to terminate maintenance. Instead, the family court commissioner lowered maintenance from $2500 a month to $500 per month. Edith filed a motion in the trial court seeking a review of that order and a hearing *de novo*.

¶ 5. On April 9, 2013, the trial court held an evidentiary hearing. At the hearing, both Edith and Bradley testified, followed by arguments by their attorneys. The financial disclosure statements filed by the parties reflect that Bradley had gross monthly income of $8991, while Edith had gross monthly income of $5360. With respect to their investments, Bradley's assets were valued at $4,442,230, and Edith's at $2,474,237. Admitted into evidence at the hearing was a United States government document which reflected that Edith, then age seventy-eight, had a twelve-year life expectancy. Both attorneys also filed briefs. The trial court scheduled the case for an oral ruling on May 16, 2013.

¶ 6. In its oral decision, the trial court found that there had been a substantial change in circumstances. Specifically, the trial court noted that when the last maintenance order was entered, Bradley was working and making $80,000 a year plus his investment income, and Edith was living on her investment income and nothing else. The trial court observed that both were now retired and both were living on their social security benefits and their investment income. The trial court concluded that Edith has enough money to meet her needs at this time, and therefore, the court was not going to order Bradley to pay any maintenance. However, given her past medical needs and the possibility of "something catastrophic" occurring, the trial court held open maintenance to Edith. This appeal follows.

ANALYSIS

A. *The trial court correctly determined that there had
 been a substantial change in circumstances.*

█

¶ 7. "In order to modify a maintenance award, the
party seeking modification must demonstrate that there
has been a substantial change in circumstances warrant-
ing the proposed modification." *Rohde-Giovanni v.
Baumgart,* 2004 WI 27, ¶ 30, 269 Wis. 2d 598, 676
N.W.2d 452; *see also* WIS. STAT. § 767.59(1c)-(1f)
(2011–12);[2] *Rosplock v. Rosplock,* 217 Wis. 2d 22, 32,
577 N.W.2d 32 (Ct. App. 1998).

█

¶ 8. Whether there has been a substantial change
in circumstances presents a mixed question of fact and
law. *Rosplock,* 217 Wis. 2d at 32–33. Whether the
change is substantial is a question of law that we review
independently. *Id.* at 33. A trial court's findings of fact
will be upheld unless clearly erroneous. *Id.*; WIS. STAT.
§ 805.17(2).

█

¶ 9. In the typical case, the focus of the substan-
tial change inquiry will "be on any financial changes the
parties have experienced." *See, e.g., Rohde - Giovanni,*
269 Wis. 2d 598, ¶ 30. As the trial court noted, when
the last order was set Bradley was employed, earning a
salary of $80,000, and also had his investment income,
while Edith was living on her investment income and
nothing else. At the time of the most recent hearing,
Edith was living on her investment income and social
security benefits. Bradley was also living on his invest-

---

[2] All references to the Wisconsin Statutes are to the
2011–12 version unless otherwise noted.

ment income and social security benefits and had been retired for fourteen years. With regard to Bradley's retirement, the trial court said: "His decision to retire is reasonable. You know, he's almost eighty years old, so it's not a premature retirement or anything of that sort. I'd also note that he did wait more than ten years before he chose . . . to bring this motion." Given the passage of time, the absence of Bradley's $80,000 salary and the fact that both parties were now supporting themselves exclusively on their investments and social security benefits, the trial court correctly found that there had been a substantial change in circumstances.

*B. The trial court properly exercised its discretion when it reduced Edith's monthly maintenance to $0 and held open the possibility that Bradley would be required to pay in the future if "something catastrophic" occurred.*

¶ 10. Modification of maintenance is committed to the sound discretion of the circuit court. *Gerth v. Gerth*, 159 Wis. 2d 678, 681, 465 N.W.2d 507 (Ct. App. 1990). We will sustain a discretionary determination if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion a reasonable judge could reach." *Liddle v. Liddle*, 140 Wis. 2d 132, 136, 410 N.W.2d 196 (Ct. App. 1987).

¶ 11. WISCONSIN STAT. § 767.56[3] sets out the factors a trial court may employ when determining mainte-

---

[3] WISCONSIN STAT. § 767.56 provides:

Upon a judgment of annulment, divorce, or legal separation, or in rendering a judgment in an action under s. 767.001(1)(g) or (j), the

nance. In making a maintenance decision, the court is not obliged to consider all of the statutory factors, but must consider those factors that are relevant. *DeLaMatter v. DeLaMatter*, 151 Wis. 2d 576, 586, 445 N.W.2d 676 (Ct. App. 1989). In *LaRocque v. LaRocque*, 139 Wis. 2d 23, 32–33, 406 N.W.2d 736 (1987), our supreme court advised that:

court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

(1) The length of the marriage.

(2) The age and physical and emotional health of the parties.

(3) The division of property made under s. 767.61.

(4) The educational level of each party at the time of marriage and at the time the action is commenced.

(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

(7) The tax consequences to each party.

(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, if the repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9) The contribution by one party to the education, training or increased earning power of the other.

(10) Such other factors as the court may in each individual case determine to be relevant.

518

These [§ 767.56] factors are the touchstone of analysis in determining or reviewing a maintenance award. They reflect and are designed to further two distinct but related objectives in the award of maintenance: to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objective) and to ensure a fair and equitable financial arrangement between the parties in each individual case (the fairness objective).

¶ 12. In the case before us, the trial court was mindful that it needed to address both the support and fairness objectives in its determination. In addressing the support objective, the trial court stated: "Mrs. Brin ... has very substantial assets and she could easily, I believe, have sufficient funds to meet her needs for the foreseeable future." As to the fairness issue, the trial court observed that when the parties divorced there was an equal division of marital property, and while their investments did not grow evenly as Bradley's were more successful, both are living on their investment income. Further the trial court did not think that "[Bradley] should now be obligated to take those increases in funds and be required to pay maintenance from them."

¶ 13. Yet Edith argues that the trial court did not appropriately consider the need for maintenance. She finds fault with the trial court's determination that Edith has sufficient funds to meet her needs for the foreseeable future.

¶ 14. As support for her position, Edith first cites *Dowd v. Dowd*, 167 Wis. 2d 409, 481 N.W.2d 504 (Ct. App. 1992). We find *Dowd* inapposite to the circumstances existing here. The Dowds, James and Ellen, divorced after twenty-four years of marriage. *Id.* at 411. James was working and making $62,250 at the time of

the divorce, *see id.*; Ellen was unable to work, *id.* at 412. James was ordered to pay Ellen $1000 a month as maintenance for her fifty percent of the property division. *Id.* at 411. This money was placed in a trust. *Id.* According to the original trial court orders, once James paid Ellen her portion of the property division, the maintenance was to be reduced to $500. *Id.* Six years after the divorce, James petitioned the court to terminate maintenance because his income had fallen to $17,300. *Id.* at 412. The trust set up for Ellen's benefit had also become depleted. *Id.* Eventually the trial court decided to reduce James's maintenance order to $150, reasoning that "because of the failure of the trust to support Ellen, James is being asked to pay maintenance twice." *Id.* at 413. The trial court believed that James should be given the opportunity to place himself in an " 'optimum financial situation.' " *Id.* This court reversed, finding that "[r]educing the maintenance obligation in order to place the payor in a better position at the expense of the payee ignores the principle that a spouse should not be forced to invade the property division in order to live while the other [spouse] does not." *Id.* at 417.

¶ 15. Here, in contrast, the parties divided their marital estate in 1992, with both getting fifty percent of the marital property; in addition, Bradley has paid substantial maintenance for over twenty years. This is not a situation where, shortly after the divorce, Edith was without maintenance and forced into using her fifty percent of the property division to support herself. *See id.* at 412. At this time both Bradley and Edith are being supported by their ample individual investments and social security benefits.

¶ 16. Next, Edith points to *Seidlitz v. Seidlitz*, 217 Wis. 2d 82, 578 N.W.2d 638 (Ct. App. 1998), as another

520

case that supports her position. The Seidlitzes, Dieter and Erna, divorced on October 30, 1995, after thirty-two years of marriage. *Id.* at 84. The trial court equalized the parties' disposable income, imputing to Erna, who had only a high school education, *see id.* at 87, and who had not worked since 1965 or 1966, *see id.,* $12,000–$14,000 of income, *id.* at 84. The trial court set maintenance at $785 a month. *Id.* Five months later Dieter retired. *Id.* at 85. One month later Dieter filed a motion to modify maintenance. *Id.* Originally a family court commissioner denied his motion. Dieter sought a *de novo* review seeking a termination of maintenance. *Id.* The trial court determined that his retirement did constitute a substantial change in circumstances and modified the maintenance payment to $485 a month, but did not terminate maintenance. *Id.* The trial court stated that it was maintaining the equalization of income approach, which the court had utilized when calculating the original maintenance award several months before. *Id.* In the opinion affirming the trial court's order, we borrowed from the *Dowd* opinion and said: "We also note that the family court's finding is in keeping with the well-established principle that a spouse should not be forced to invade the property division in order to live while the other does not." *Seidlitz,* 217 Wis. 2d at 92.

¶ 17. While we agree with that principle of *Seidlitz,* it does not come into play in the circumstances present here. In this case, both Bradley and Edith are supporting themselves from the estates they built up after equally splitting their marital estate when they were divorced twenty-two years ago. In addition, Edith was never forced to dip into her property division to survive because she received substantial maintenance from Bradley. Both of the cases cited by Edith involve

521

requests to terminate maintenance under circumstances unlike those here. In *Dowd*, the payor wanted to terminate maintenance so he could improve his financial condition. In *Seidlitz*, he wanted to terminate maintenance to his former wife, who had not worked in thirty years, five months after the divorce.

¶ 18. Additionally, Edith argues that the trial court "did not appropriately apply the fairness goal of maintenance." (Formatting altered.) In addition to the recipient's need for support, "[f]airness must be considered with respect to the situations of both parties in determining whether maintenance should be continued indefinitely, continued for a limited amount of time, reduced, or terminated." *Rohde - Giovanni*, 269 Wis. 2d 598, ¶ 31.

¶ 19. Edith argues that the trial court failed to take into consideration the standard of living she would have enjoyed but for the divorce. The trial court stated:

> In terms of the support and fairness objectives as to the support objective, the Court need be concerned that the recipient spouse be supported in accordance with her needs and with the earning capacities of the parties. The fairness objective requires the Court to ensure that a fair and equitable financial arrangement between the parties occurs in each individual case.

Later, the trial court remarked that:

> The fairness issue: Each party essentially has their property division from the divorce, which was equal. And Mr. Brin has been more successful in growing his than Mrs. Brin has been. She's – she's been utilizing her funds over the years a little earlier than he's been required to do. But the fact remains that the parties got an equal property division, and they're

essentially living off of those funds or whatever they have left of them. I don't think that because Mr. Brin was more successful in investing and was able to grow his funds that he should now be obligated to take those increase[s] in funds and be required to pay maintenance from them.

Now, I want to be clear. It's a fair argument to make in many, many cases. And [counsel] is correct in his proposition that the Court can and should look at those numbers. But when I look at the resources that Mrs. Brin has, I think she has enough to meet her needs at this point in time.

¶ 20. We agree with the trial court. Looking at Edith's financial statement, we note that she has approximately $65,000 a year of income from her investments and social security benefits. She owns her home, which was once the family home, which has an estimated value of $200,000. She also has almost $2,500,000 worth of investments. Her expenses include a California apartment that she rents for $9000 a year, and $4200 worth of yearly transportation expenses – other than her automobile.

¶ 21. Edith also complains that while neither she nor Bradley are living at the standard of living they had prior to their divorce, she "is disproportionately bearing the impact of the lower standard of living because Bradley is able to enjoy a standard of living closer to that during the marriage . . . ." However, there is little in the record that addresses their standard of living twenty-two years ago. From the expenses reflected on Edith's financial statement, it would appear she had and has an above average income and a high standard of living.

¶ 22. In claiming that she is entitled to maintenance, Edith cites to *Heppner v. Heppner*, 2009 WI App

90, 319 Wis. 2d 237, 768 N.W.2d 261. John and Susan Heppner had been married for over thirty years. *Id.*, ¶ 1. John made over $800,000 the year before the divorce and over $1,500,000 the year before that. *Id.*, ¶ 5. Except for some employment early in the marriage, Susan had not worked outside the home. *Id.*, ¶ 2. Their case was tried to the court. The trial court granted maintenance to Susan, but for only four years. *Id.*, ¶ 12. In reversing the trial court, this court observed that:

> "Fairness" has a special meaning under the law of maintenance: "[the court of appeals] believe[s] that a reasonable maintenance award is measured . . . by the lifestyle that the parties enjoyed in the years immediately before the divorce and could anticipate enjoying if they were to stay married." Thus, the recipient spouse is *entitled,* assuming that the payor spouse's income permits it, to enjoy his or her life at the standard that he or she could anticipate enjoying "but for the divorce."

*Id.*, ¶ 10 (emphasis added and omitted; citations and internal citation omitted).

■

¶ 23. While *Heppner* is a correct pronouncement of the law, our decision here does not contradict *Heppner* because Edith has the ability to enhance her standard of living should she choose to do so by invading her ample assets. It makes little sense to have Bradley invade his assets to pay his former wife maintenance so that she need not deplete her estate. This analysis would not hold up if the parties were younger, but at age seventy-nine, both have enough to support themselves beyond their life expectancies. As noted in *Heppner*:

> The payment of maintenance is not to be viewed as a permanent annuity. Rather, such payment is designed to maintain a party at an appropriate standard of

living, under the facts and circumstances of the individual case, until the party exercising reasonable diligence has reached a level of income where maintenance is no longer necessary.

*Id.* (citation and quotation marks omitted). Consequently, we conclude that the trial court did consider the fairness objective, but determined it was no longer "fair" for Bradley to pay maintenance.[4]

¶ 24. In sum, the trial court properly exercised its discretion when it determined that at age seventy-nine, Bradley no longer had to pay maintenance to his former wife from whom he has been divorced for over twenty years and who has $65,000 of yearly income and investments totaling almost $2,500,000. In doing so, the trial court also considered both the support and the fairness objective.

*By the Court.*—Order affirmed.

---

[4] Edith makes two other rather perplexing arguments. First, she wrote in her brief that "[t]he court impermissibly excluded income available for maintenance from the 'fairness' analysis, and the court's analysis of 'fairness' is inadequate in light of the circumstances of this case." The record belies that statement. The trial court did not exclude any income from its assessment of Bradley's finances. Also, Edith wrote that, "The logical conclusion of the [trial] court's analysis is that a payor in a long-term marriage could avoid paying maintenance in the future simply because the income was generated postjudgment." Our review of the record does not suggest that the trial court believed postjudgment income was exempt when determining a maintenance order.