COURT OF APPEALS
DECISION
DATED AND FILED

November 20, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2069**

STATE OF WISCONSIN

Cir. Ct. No. 2023FA163

IN COURT OF APPEALS
DISTRICT IV

IN RE THE MARRIAGE OF:

SHANNON L. KELLY,

PETITIONER-APPELLANT,

V.

JEREMY DORSCHNER,

RESPONDENT-RESPONDENT.

APPEAL from a judgment of the circuit court for Portage County: PATRICIA BAKER, Judge. *Reversed and cause remanded for further proceedings.*

Before Graham, P.J., Blanchard, and Kloppenburg, JJ.

¶1 KLOPPENBURG, J. Shannon Kelly appeals a judgment of divorce from Jeremy Dorschner. Kelly argues that the circuit court erroneously exercised

its discretion when it: (1) treated Dorschner's military pension (generally, the "pension") as his income and not as divisible property and awarded Kelly only 10% of the monthly pension payments; (2) assigned all of Kelly's student loan debt solely to her as part of the property division; (3) denied maintenance to Kelly; and (4) ended, as of the date that Kelly turns 62, Dorschner's obligation to pay the monthly cost to maintain the spousal benefit under his pension plan, for which Kelly would be the beneficiary.

¶2     We conclude that the circuit court erroneously exercised its discretion when it treated Dorschner's pension as income, rather than property, and failed to adequately support its decisions to award Kelly 10% of Dorschner's monthly pension payments in lieu of maintenance to Kelly, assign all of Kelly's student loan debt to Kelly, deny maintenance to Kelly, and relieve Dorschner of the obligation to pay the cost of the spousal benefit when Kelly turns 62. Accordingly, we reverse those parts of the court's judgment and remand for further proceedings.

## BACKGROUND

¶3     The following facts, which provide context for all of the issues on appeal, are based on the circuit court's findings and on evidence and testimony in the record either explicitly or implicitly credited by the court.

¶4     Kelly and Dorschner married in 1999 and had three children, each of whom attained the age of majority before the divorce in 2024.

¶5     Dorschner joined the military in 1997. Due to his military service, the family moved numerous times over the course of the 25-year marriage. The last move that resulted from a military order was to Maryland in 2018.

2

¶6 In 2020, Kelly moved from Maryland to Arizona, and after less than a year, she moved from Arizona to Wisconsin, where she purchased and lived in a 5,500-square-foot house in Stevens Point; Dorschner remained in Maryland and moved into a recreational vehicle. Dorschner did not live in the Stevens Point house beyond weeks-long visits. In 2024, Kelly moved out of the Stevens Point house and incurred over $10,000 in expenses to move to Florida. The Stevens Point house was sold for $590,000, and the sale proceeds of $86,000 were held in trust. Some of the mortgage payments and taxes on the house, which Kelly was responsible for paying, were paid late or not at all, resulting in late fees and taxes being taken out of the sale proceeds.

¶7 Dorschner attended college for two years before joining the military. He incurred about $8,000 in student loan debt, which was paid out of family finances during the marriage. Dorschner then served in the military as an aircraft mechanic, aviation officer, and lieutenant commander, and the military paid for him to obtain a bachelor's degree and a master's degree. Dorschner retired from military service at the age of 47 in September 2023, at which time he began receiving monthly military disability and pension payments, which continued to the time of the divorce and into the future. He applied for numerous jobs after retiring but was disqualified from many of the positions to which he applied because of his disability.

¶8 Kelly obtained a bachelor's degree and a master's degree during the marriage. Kelly incurred approximately $97,000 in student loan debt, which including interest had risen to approximately $145,000 at the time of the divorce. Kelly worked part-time as a substitute teacher from 2008 to 2018, when all three of the children were still minors, and as a mental health counselor and part-time adjunct professor from 2018 to 2020. Kelly moved to Arizona in 2020 for a job as

a mental health counselor, and since October 2020, she had been working at Headspace, where she was a clinical manager at the time of the divorce. At the time of the divorce, Kelly's income was on "an upwards … trajectory."

¶9 Kelly filed for divorce in August 2023. Kelly reported a gross monthly income of $6,990.25 and a net monthly income of $5,109.40, and Dorschner reported a gross monthly income of $9,571, consisting of $5,823 from his pension and $3,748 in military disability payments. The marital estate consisted mostly of debt.

¶10 In their position statements submitted to the circuit court, the parties made the following respective requests regarding Dorschner's pension payments, Kelly's student loan debt, maintenance, and the spousal benefit cost.

¶11 Kelly "anticipate[d]" that the circuit court would award her 50% of Dorschner's monthly pension payments. Dorschner asked that the court treat his ongoing pension payments as his income, rather than as property subject to division, and that, in lieu of ordering Dorschner to pay Kelly maintenance, the court award Kelly 10% of the monthly pension payments, for a total of $582.30 per month.

¶12 Kelly asked that the circuit court divide responsibility for her student loan debt equally between Kelly and Dorschner, and Dorschner asked that the court make Kelly "solely responsible" for her student loan debt.

¶13 Kelly asked that the circuit court grant her maintenance in the amount of $2,045.59 per month, to be reduced if the court awarded her 50% of Dorschner's monthly pension payments as part of the divorce judgment, as she "anticipate[d]." Alternatively, but still assuming that the court would award her

50% of Dorschner's monthly pension payments, Kelly asked that the court hold open her claim for maintenance for an unlimited time, until Dorschner obtained employment.

¶14 Kelly asked that the circuit court require that the spousal benefit under Dorschner's pension plan continue to be paid for, either by Dorschner or by Kelly, which would guarantee Kelly receiving approximately $3,200 per month after Dorschner's death. Dorschner indicated that he would continue to pay the monthly cost of approximately $375 for that benefit.

¶15 The circuit court held a one-half day trial on June 24, 2024, at which Kelly and Dorschner testified. On June 28, 2024, the court issued an oral ruling and a written decision consistent with that ruling. The court ruled as follows regarding the four issues on appeal: (1) the court treated Dorschner's monthly pension payments as his income and awarded Kelly 10% of those monthly payments; (2) the court assigned Kelly 100% of her student loan debt, resulting in Dorschner receiving a net total of $24,191 in debt, and Kelly receiving a net total of $152,805 in debt; (3) the court declined to award Kelly maintenance; and (4) the court required Dorschner to pay the spousal benefit cost and to name Kelly as the beneficiary "until she remarries, dies[,] or until she is 62 years of age and therefore Social Security eligible."

¶16 Kelly appeals.

## DISCUSSION

¶17 Kelly argues that the circuit court erred in four respects. Specifically, Kelly argues that the court: (1) erred as a matter of law and erroneously exercised its discretion by treating Dorschner's pension as his income

5

rather than as divisible property and by awarding Kelly only 10% of Dorschner's monthly pension payments; (2) erred as a matter of law and erroneously exercised its discretion by assigning 100% of Kelly's student loan debt to her as part of its property division; (3) erroneously exercised its discretion when it denied her maintenance; and (4) erred as a matter of law and erroneously exercised its discretion when it ended Dorschner's obligation to pay the spousal benefit cost when Kelly turns 62. We begin with the applicable standard of review. We then address Kelly's property division arguments regarding the court's treatment of Dorschner's pension and her student loan debt, and her arguments regarding the court's decisions on maintenance and the spousal benefit cost.

## I. Standard of Review

¶18 Decisions on property division and maintenance are committed to the sound discretion of the circuit court. *McReath v. McReath*, 2011 WI 66, ¶21, 335 Wis. 2d 643, 800 N.W.2d 399. However, the exercise of discretion is not the equivalent of unfettered decision-making. *Bahr v. Bahr*, 107 Wis. 2d 72, 77-78, 318 N.W.2d 391 (1982). It "must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Kennedy v. Kennedy*, 145 Wis. 2d 219, 222, 426 N.W.2d 85 (Ct. App. 1988); *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981) ("A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law.").

¶19 We will not disturb the circuit court's determinations absent an erroneous exercise of discretion. *McReath*, 335 Wis. 2d 643, ¶21. A circuit court

erroneously exercises its discretion when it fails to apply or misapplies the statutory factors, makes an error of law, bases its award on factual errors, or fails to base its decision on facts in the record. *King v. King*, 224 Wis. 2d 235, 248, 251, 590 N.W.2d 480 (1999); *LeMere v. LeMere*, 2003 WI 67, ¶14, 262 Wis. 2d 426, 663 N.W.2d 789; *Rohde-Giovanni v. Baumgart*, 2004 WI 27, ¶18, 269 Wis. 2d 598, 676 N.W.2d 452. In addition, "[w]e may search the record to supply a fact missing from the [circuit] court's decision which supports that decision. We may not, however, exercise the [circuit] court's discretion." *Kennedy*, 145 Wis. 2d at 224; *see also Thorpe v. Thorpe*, 108 Wis. 2d 189, 198, 321 N.W.2d 237 (1982) ("The failure of a [circuit] court to explain its reasons for reaching a particular result is … an [erroneous exercise] of discretion unless an appellate court can come to a reasonable conclusion from the record that the award was appropriate.").

¶20 "When an issue of law arises while we are reviewing a circuit court's exercise of discretion," we review that issue de novo. *McReath*, 335 Wis. 2d 643, ¶22. When an exercise of discretion involves a finding of fact, we accept the circuit court's findings of fact unless clearly erroneous. *Id.* "[A] finding of fact is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence.'" *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (quoted source omitted).

## II. Property Division: Dorschner's Pension and Kelly's Student Loan Debt

¶21 "The general rule is that assets and debts acquired by either party before or during the marriage [with exceptions not applicable here] are divisible upon divorce." *Derr v. Derr*, 2005 WI App 63, ¶10, 280 Wis. 2d 681, 696 N.W.2d 170. In a divorce, a party's pension, including a military pension, "must

be considered as property for purposes of property division." ***Cook v. Cook***, 208 Wis. 2d 166, 184, 560 N.W.2d 246 (1997). There is a presumption that the parties' assets and debts are divided evenly. ***Steinke v. Steinke***, 126 Wis. 2d 372, 379, 380-81, 376 N.W.2d 839 (1985); *see also* ***LeMere***, 262 Wis. 2d 426, ¶16 ("Property division in divorce is governed by WIS. STAT. § 767.255 [(2001-02)], which establishes a presumption in favor of equal division of marital property." (referring to predecessor statute to WIS. STAT. § 767.61 (2023-24))).[1] When, as in this case, one of the parties is shown to have been the primary homemaker, "'[p]art of the rationale in creating the presumption of equal property division is that the homemaking partner has contributed services which have enabled the financially supporting partner to achieve [the partner's] station in life, and in so doing the homemaking partner has lost ground in the job market.'" ***LeMere***, 262 Wis. 2d 426, ¶18 (quoted source omitted). The circuit court may deem the presumption rebutted only after considering the relevant statutory factors set forth in § 767.61(3).[2] *See* ***LeMere***, 262 Wis. 2d 426, ¶16 (the circuit court "may deviate

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version, which does not materially differ from the versions interpreted by the case law cited in this opinion, unless otherwise noted.

[2] These factors are:

> (a) The length of the marriage.
>
> (b) The property brought to the marriage by each party.
>
> (c) Whether one of the parties has substantial assets not subject to division by the court.
>
> (d) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.
>
> (e) The age and physical and emotional health of the parties.

(continued)

8

from the presumption of equal property division, but only after considering" the factors now set forth in § 767.61(3)). The court may not rely on a single factor, but it also need not address inapplicable factors, and it may give some factors greater weight than others. *Id.*, ¶¶22, 25-26.

---

(f) The contribution by one party to the education, training or increased earning power of the other.

(g) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

(h) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having physical placement for the greater period of time.

(i) The amount and duration of an order under [WIS. STAT. §] 767.56 granting maintenance payments to either party, any order for periodic family support payments …, and whether the property division is in lieu of such payments.

(j) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

(k) The tax consequences to each party.

(L) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

(m) Such other factors as the court may in each individual case determine to be relevant.

WIS. STAT. § 767.61(3).

¶22    One potentially relevant factor that the circuit court may consider when deciding whether to deviate from the presumption of equal property division is "'each party's efforts to preserve marital assets.'"  **Covelli v. Covelli**, 2006 WI App 121, ¶29, 293 Wis. 2d 707, 718 N.W.2d 260 (quoting **Anstutz v. Anstutz**, 112 Wis. 2d 10, 12, 331 N.W.2d 844 (Ct. App. 1983)); *see* WIS. STAT. § 767.61(3)(m) (a court may consider, in addition to the factors listed in the statute, other factors that the court determines "to be relevant").  "The court may require a party to pay the debts arising from his or her squandering of marital assets or the intentional or neglectful destruction of property."  **Covelli**, 293 Wis. 2d 707, ¶29.  "**Anstutz** teaches that WIS. STAT. ch. 767 makes recompense available when one spouse has mismanaged or dissipated assets," otherwise known as committing "marital waste."  **Covelli**, 293 Wis. 2d 707, ¶30.

### A.  Additional Background

¶23    The circuit court made the following findings pertinent to its division of Dorschner's pension and Kelly's student loan debt, including findings based on Dorschner's testimony, which the court credited.

¶24    Kelly sold the parties' house in Maryland, where she had moved as part of the family's final military move, and did not inform Dorschner of the distribution of the proceeds from that sale.  She then purchased what the circuit court deemed a "palatial" 5,500-square-foot house in Stevens Point.  Dorschner never lived in the Stevens Point house and instead lived in a recreational vehicle in Maryland.  The Stevens Point house sold for nearly $600,000 but netted only $86,000 after the sale and satisfaction of the mortgage and related debts.  Kelly was responsible for making mortgage payments on the Stevens Point house, and Dorschner timely gave Kelly money equal to half of the monthly mortgage

payments, but multiple mortgage payments were paid late or not at all. In addition, some taxes due on the house were paid late or not at all.

¶25 The circuit court further found that, when Kelly then moved from Stevens Point to Florida, Dorschner was not allowed to remove items that he wanted from the Stevens Point house, and there "was ultimately not an equal distribution of personal property [from] within the home." The personal property that Kelly retained from the house had a value of between $3,000 and $5,000. In addition, Kelly "unilaterally transferred [one of the parties' vehicles] from being a marital asset to her daughter," and incurred over $10,000 in expenses in moving from Stevens Point to Florida.

¶26 Continuing with the circuit court's findings, Kelly obtained her bachelor's degree in 2008 and her master's degree in 2012 and owed $147,000 in student loans. She had not made regular payments on those loans. Kelly had a job that used "the full benefits of [her] master's degree with an upward trajectory for earning capacity." Dorschner had not received, and would not receive, any benefit from Kelly's additional education, and only Kelly would benefit from her student loan debt.

¶27 After making these findings, the circuit court stated that it would be "deviating from an equal division of property and debt following the guidance" of *Covelli*, 293 Wis. 2d 707, on the issue of marital waste. The court stated:

> This is an unequal division of debts and assets due to the nature of the type of debts incurred and behavior of the parties. For example, [Kelly's] student loans are assigned directly to her as she is the only beneficiary of those student loans and she is the only person that may apply for continued deferments or even loan forgiveness….
>
> Additionally, for the past nearly 4 years, Mr. Dorschner resided in a recreational vehicle while

11

> [Kelly] resided in a palatial home that was worth nearly $600,000. It is clear to the [c]ourt that [Kelly] was living far beyond the family's means when residing in Stevens Point.
>
> During the pendency of the case[,] [Kelly took] actions … that strongly suggest marital waste[,] such as transferring the $17,000 [vehicle] to one of the children without the consent of Mr. Dorschner, moving the home to Florida at a cost of over $10,000 without his consent and agreement, and the massive number of credit cards and associated debt that has been incurred.

¶28 The circuit court listed Dorschner's pension on the spreadsheet containing the division of the parties' marital assets, but did not assign it a value. The court divided the remaining assets approximately 57/43 in Dorschner's favor: assigning approximately $117,000 to Dorschner and $90,000 to Kelly. Included in the assets assigned to Kelly was the $17,356 value of the vehicle that she transferred to the parties' daughter. The court divided the debts approximately 37/63 in Dorschner's favor, assigning approximately $141,000 to Dorschner and $243,000 to Kelly. Included in the $243,000 in debt assigned to Kelly was her student loan debt of $147,000. Excluding Dorschner's pension, as a result of the court's division of assets and debts, Dorschner received a net total of $24,191 in debt, while Kelly received a net total of $152,805 in debt.

¶29 The circuit court separately addressed Dorschner's pension as follows. After denying maintenance to Kelly, the court stated: "However, because [Kelly] did not begin reaping the benefits of her advanced education until somewhat later in her life and provided years of child care to this family the [c]ourt will grant her 10% of Mr. Dorschner's … pension."

*B. Pension*

¶30　Kelly argues that the circuit court erroneously exercised its discretion when it treated Dorschner's pension as his income and awarded Kelly only 10% of the monthly pension payments, contrary to the presumption of equal division of property. We conclude that the court erroneously exercised its discretion when it did not treat the pension as divisible property and when it did not adequately explain why it deviated significantly from the presumption of equal division of the pension.

¶31　As stated, a pension is considered a marital asset and, accordingly, it is subject to the presumption of equal division. *Steinke*, 126 Wis. 2d at 380-81; *Cook*, 208 Wis. 2d at 175. "The result of treating a pension interest as an asset of the marital estate to be divided is certainly in keeping with fairness principles where, for example, the length of the marriage is sufficiently coextensive with the length of employment leading to the interest in the pension plan." *Steinke*, 126 Wis. 2d at 382-83. Such is the case here: Dorschner joined the military in 1997 and retired in 2023, and the parties were married from 1999 to 2024.

¶32　The circuit court referenced the presumption of equal property division in its decision, and a line for Dorschner's pension was included in the court's spreadsheet of assets. However, the court's reasoning regarding its award of 10% of Dorschner's monthly pension payments to Kelly reflects that the court neither treated the pension as an asset that counted as divisible property nor began from a presumption that the pension was to be divided equally. Rather, it is evident from the record that the court treated the monthly pension payments as Dorschner's income and operated from the presumption that 100% of those pension payments should be awarded to Dorschner. In effect, the court awarded

13

Kelly 10% of Dorschner's monthly pension payments as a substitute for maintenance, as Dorschner had proposed in his position statement to the court.

¶33     As part of its rationale for the award to Kelly of 10% of Dorschner's monthly pension payments, the circuit court found that Kelly had provided "years of child care to this family" and that she "did not begin reaping the benefits of her advanced education until somewhat later in her life."  While these are both factors that support the presumption of an equal division of property—*see Perrenoud v. Perrenoud*, 82 Wis. 2d 36, 49, 260 N.W.2d 658 (1978) ("[T]he contribution of a full-time homemaker may be considered greater than, or at least as great as, that of a working spouse."); *LeMere*, 262 Wis. 2d 426, ¶18 ("'Part of the rationale in creating the presumption of equal property division is that … the homemaking partner has lost ground in the job market.'" (quoted source omitted))—the court did not consider these factors in terms of how they affected the presumption of equal property division here.  Rather, the court implicitly determined that these factors warranted reducing Dorschner's monthly income from the pension by 10% and awarding that 10% to Kelly to supplement her monthly income, as a substitute for supplementing her monthly income by awarding her maintenance.

¶34     The result is that the circuit court relied on an incorrect legal standard, namely that Dorschner's pension was not a marital asset subject to the presumption of equal division, but rather only part of his monthly income, from which Kelly's monthly income could be supplemented in lieu of maintenance.  Accordingly, the court failed to connect the facts of record to a correct standard of law to achieve a reasonable result.  This was an erroneous exercise of discretion.  *See Steinke*, 126 Wis. 2d at 380, 382-83 (explaining that "as a matter of law, the value of a spouse's interest in a pension fund must be included by the [circuit] court in the division of the property between the spouses," and rejecting the idea

that a circuit court "may exclude an interest in a pension fund from the property division if the fund is considered as income in awarding maintenance"); ***Kennedy***, 145 Wis. 2d at 222 (A circuit court's exercise of discretion "must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.").

¶35   Dorschner argues that the circuit court had broad discretion to divide the pension to, in his words, "fashion the most equitable and fair result." Specifically, citing ***Dutchin v. Dutchin***, 2004 WI App 94, ¶1, 273 Wis. 2d 495, 681 N.W.2d 295, Dorschner argues that a court has discretion to treat a pension as income rather than divisible property. In ***Dutchin***, the circuit court addressed a pension belonging to one spouse as both an asset to be divided equally between the spouses and as income to the spouse with the pension, and decided to treat the pension as that spouse's income to avoid "a complicated and unnecessary circular flow of money." ***Id.***, ¶22; *see also **id.***, ¶5 (the circuit court found that if the pension were divided equally, the spouse without the pension would have a higher monthly income and would have to pay maintenance to the spouse with the pension, resulting a circular flow of money back and forth between the spouses). In contrast, the circuit court here engaged in no similar analysis of the parties' relative incomes, such that it would create a needless circular flow of money between the parties to divide the pension equally by treating Dorschner's pension as divisible property. Accordingly, ***Dutchin*** does not support Dorschner's argument.

¶36   In addition, we question whether we can rely on ***Dutchin***, 273 Wis. 2d 495, ¶¶20, 22, to the extent that it could be interpreted to condone the treatment of a pension as income, because our supreme court has unambiguously

stated that, as a matter of law, a pension must be considered in the division of property as an asset subject to the presumption of equal division. *See Cook*, 208 Wis. 2d at 175; *Steinke*, 126 Wis. 2d at 380; *see also Cook*, 208 Wis. 2d at 189 (stating that this court has no authority to overrule or withdraw language from an opinion of our supreme court).

¶37 Dorschner also argues that the circuit court appropriately exercised its discretion by treating the pension as his income, as opposed to divisible property, because the court "was not presented with any evidence as to the value of the pension at the time of the trial." Dorschner argues that the court "cannot be faulted for the absence of evidence that was never properly introduced at trial," and that the court "rendered its decision based on the [evidence] available at the time of trial." However, a circuit court "must evaluate and include the pension interest in the property division whether or not the parties present evidence on its value." *Steinke*, 126 Wis. 2d at 383. As a practical matter, one acceptable alternative method of dividing a pension, with or without evidence of its value, is to award an "equitable percentage of the pension payments" to the spouse without the pension. *See id.* at 384-85 (describing three valuation methods for pensions, and noting that the method described above "involves the least amount of guesswork in valuing [a] pension interest"). In any case, as a legal matter, the percentage of pension payments to be awarded to each spouse is presumptively 50%, *see Kelly v. Kelly*, No. 2009AP852, unpublished slip op., ¶13 (WI App Mar. 11, 2010) ("*Steinke* is controlling and requires that the pension be included in the property division and also requires that, if the court decides to divide the pension by dividing the monthly payments, the 50/50 presumption applies."), and

16

the court here failed to explain why it deviated so significantly from this presumption.[3]

¶38 Dorschner asserts that if the circuit court "were to divide the pension equally, [Kelly] would surely be obligated to provide financial support to [Dorschner], as his only income at the time of trial would have been his disability check." However, this assertion does not undermine Kelly's argument that the court erroneously exercised its discretion by failing to address Dorschner's pension as an asset in its property division analysis. Instead, Dorschner's point is for the court to potentially take into account following remand. Explaining further, it is true that, to the extent that the court's division of property, including Dorschner's pension, may affect the award of maintenance, the court retains broad discretion in determining an appropriate division of property and award of maintenance, and the court is allowed to take into account the potential "circular flow of funds between the parties" when exercising that discretion. *See* ***Herdt v. Herdt***, 152 Wis. 2d 17, 22, 447 N.W.2d 66 (Ct. App. 1989) (affirming circuit court's unequal division of property, specifically a pension, in lieu of maintenance); *see also* ***Cook***, 208 Wis. 2d at 180 ("because of the infinite range of factual situations facing circuit courts in dividing property and determining maintenance …, some cases have found it inappropriate to enforce an absolute bar against counting a pension in the property division and in the maintenance … determination"). Accordingly, on remand, the court may revisit its maintenance award depending on how it divides Dorschner's pension and the parties' other

---

[3] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value).

property.[4] And, the court may articulate adequate grounds to deviate from the presumption of equal division of Dorschner's pension and the parties' other property. However, the court must address Dorschner's pension as an asset in its property division analysis in order to properly exercise its discretion.

## C. Student Loan Debt

¶39 Kelly argues that the circuit court erroneously exercised its discretion when it assigned to her full responsibility for her student loan debt. We conclude that the court erroneously exercised its discretion by assigning Kelly's student loan debt solely to Kelly because the court based its award on facts that the record establishes are clearly erroneous.

¶40 The circuit court deviated from the presumption of an equal division of Kelly's debt based on its finding that Kelly is the only person who will benefit from her student loan debt and that Dorschner did not and will not benefit from Kelly's education financed by those loans. This finding is "'against the great weight and clear preponderance of the evidence.'" *See **Phelps***, 319 Wis. 2d 1, ¶39 (quoted source omitted). Specifically, this finding is directly contrary to the evidence that, at the time of the court's decision, Kelly had "a job that utilizes the full benefits of [her] master's degree," such that her relevant salary was directly connected to the education financed by the student loans, and that for two years before the divorce she earned the same salary that she earned at the time of divorce, approximately $80,000. Thus, it could not reasonably be disputed that

---

[4] While Kelly does not argue that the circuit court erroneously exercised its discretion in dividing the rest of the parties' property (aside from the student loan debt, addressed below), the court may decide to reevaluate its division of the parties' property as part of its consideration of the pension as part of that division.

18

Dorschner benefited from this increased income due to Kelly's education for at least two years during the marriage. In addition, the court relied on that salary level, which it found enabled Kelly to be "self-supporting," to justify the denial of maintenance to Kelly. Thus, it could not reasonably be disputed that Dorschner continued to benefit from Kelly's further education financed by her student loans in not being required to pay maintenance due to Kelly's increased earning capacity.

¶41 Dorschner argues that the circuit court's decision "reflected a reasonable analysis of the nature of the debt and the parties' respective contributions and conduct." He specifically references the purported lack of benefit to Dorschner from Kelly's student loans, Kelly's ability to seek deferments or forgiveness of the student loans, and Kelly's engaging in various kinds of marital waste. These arguments are unavailing. Regarding Kelly's ability to seek deferments or forgiveness, Dorschner does not explain how that possibility differs from the possibility that a debtor may obtain reductions of other kinds of debt, such that in this case it supported a deviation from the equal property division presumption as to only this debt. As for Kelly's marital waste, while specific instances of marital waste may support an unequal division of other debts or of assets and debts as a whole, Dorschner does not identify specific instances of marital waste that the court connected to her student loan debt, as opposed to, for example, her credit card debt and aspects of the Stevens Point house purchase and sale, and our review of the record reveals no such connection.[5]

---

[5] To the extent that Dorschner intends to make other arguments on the student loan topic, either we have addressed them in our analysis of the pension division or they are undeveloped, and we do not consider them for those reasons. *See Techworks, LLC v. Wille*, 2009 WI App 101, ¶27, 318 Wis. 2d 488, 770 N.W.2d 727 (we are not required to entertain undeveloped arguments).

### III. Maintenance

¶42    Kelly argues that the circuit court erroneously exercised its discretion when it denied her maintenance.  Specifically, Kelly argues that the court misapplied the statutory factors, failed to consider relevant facts, and failed to demonstrate an application of the fairness objective of maintenance.  We conclude that the court erroneously exercised its discretion when it denied Kelly maintenance because it did not demonstrate that it applied at least one relevant factor, and it also applied an incorrect legal standard.

¶43    In making a maintenance decision, the circuit court must look to the factors set forth in WIS. STAT. § 767.56(1c).[6]  ***Brin v. Brin***, 2014 WI App 68, ¶11,

---

[6] Those factors are:

> (a) The length of the marriage.
>
> (b) The age and physical and emotional health of the parties.
>
> (c) The division of property made under [WIS. STAT. §] 767.61.
>
> (d) The educational level of each party at the time of marriage and at the time the action is commenced.
>
> (e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
>
> (f) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.
>
> (g) The tax consequences to each party.
>
> (h) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has

(continued)

354 Wis. 2d 510, 849 N.W.2d 900. "[T]he court is not obliged to consider all of the statutory factors, but must consider those factors that are relevant." *Id.* The statutory factors "are designed to further two distinct but related objectives in the award of maintenance": "the support objective," which is "to support the recipient spouse in accordance with the needs and earning capacities of the parties," and "the fairness objective," which is "to ensure a fair and equitable financial arrangement between the parties in each individual case." *LaRocque v. LaRocque*, 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987). A circuit court erroneously exercises its discretion when it misapplies or fails to apply the relevant statutory factors or when it fails to apply the objectives of maintenance. *Id.* In addition,

> [a] circuit court erroneously exercises its discretion if it:
>
> "fail[s] to exhibit a reasoned, illuminative mental process with which to logically connect its decision, findings and conclusions to the maintenance award. The [circuit] court must not stop at reciting its findings of fact and conclusions of law and its decision; it must also set forth the factors on which it relied in reaching the maintenance award."

*King*, 224 Wis. 2d at 251 (quoting *Steinke*, 126 Wis. 2d at 389).

---

> made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, if the repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.
>
> (i) The contribution by one party to the education, training or increased earning power of the other.
>
> (j) Such other factors as the court may in each individual case determine to be relevant.

WIS. STAT. § 767.56(1c).

*A. Additional Background*

¶44     In denying maintenance to Kelly, the circuit court stated that, considering the WIS. STAT. § 767.56(1c) factors,

> it is clear that [Kelly] provided significant child raising efforts.  [§ 767.56(1c)(i), (j).]  She is also physically and emotionally healthy.  [§ 767.56(1c)(b).]  She has been involved in the job market for the last four years.  [§ 767.56(1c)(e).]  She has a master's degree and a job that utilizes the full benefits of that master's degree with an upward trajectory for earning capacity, at $84,000 annually.  [§ 767.56(1c)(e).]  She is not only self-supporting at this point but actually earns significantly more than Mr. Dorschner's pension payment of $5,823 monthly for a total of $69,000 annually.  [§ 767.56(1c)(f).]

The court further stated:

> To this [c]ourt it appears obvious that there is no need for the traditional maintenance which is intended to provide a party that is less well situated to maintain the same style of life that they enjoyed during the marriage.  [Kelly] is 4[7] years of age and of good health.  [§ 767.56(1c)(b).]  She has an excellent professional position that was obtained using the education she acquired while in the marriage.  She will probably continue working another 19 to 20 years….
>
> Therefore, this [c]ourt is denying maintenance for … [Kelly].

*B. Analysis*

¶45     The circuit court made findings as to a number of factors in WIS. STAT. § 767.56(1c).  However, the record does not reflect that the court considered at least one relevant factor when determining whether to award maintenance to Kelly: the division of property, § 767.56(1c)(c).  That is, the court failed to mention or demonstrate consideration of its property division decision in making its maintenance decision; nor did it explain why the property division decision was

22

not relevant to the maintenance decision. While the court found that Kelly's "upward trajectory for earning capacity" enabled her to be self-supporting, the court did not address whether her ability to be self-supporting based only on her income would be hindered by the debt that the court awarded to her in its property division decision.

¶46 A court has discretion to weigh some factors more heavily than others, *see LeMere*, 262 Wis. 2d 426, ¶25 (the circuit court is not precluded from giving one factor "greater weight than another"), but failing to demonstrate consideration of a relevant factor at all is an erroneous exercise of discretion, *see King*, 224 Wis. 2d at 252 ("Circuit courts are not permitted to acknowledge the statutory factors in form but disregard them in substance."). We must be able to discern from the record some way in which the factor has been applied. *See Thorpe*, 108 Wis. 2d at 198 ("The failure of a [circuit] court to explain its reasons for reaching a particular result is … an [erroneous exercise] of discretion unless an appellate court can come to a reasonable conclusion from the record that the award was appropriate.").

¶47 In addition, as explained above, the circuit court effectively awarded Kelly 10% of Dorschner's monthly pension payments as an alternative to maintenance without applying the legally correct standard. Moreover, because we are remanding to the circuit court on the issue of property division, its analysis on maintenance may change based on potential changes to the division of property, including Dorschner's pension. *See* WIS. STAT. § 767.56(1c)(c); *Bahr*, 107 Wis. 2d at 79-80 (decisions on property division and maintenance "are closely related" and "cannot be made in a vacuum," and, therefore, "a substantial error in the property division necessitate[s] reconsideration of the maintenance award").

¶48    Dorschner argues that the circuit court "explicitly addressed and applied all relevant statutory factors on the record prior to issuing its findings." As explained in detail above, the record refutes this assertion. As part of this argument, Dorschner lists a number of factors that the court considered and contends that they support the court's decision not to award maintenance to Kelly. Kelly does not challenge the court's findings as to some of the factors that the court considered, including that Kelly is "already self-supporting and has strong earning potential due to her age and education," and we agree that these findings are not clearly erroneous. However, the court failed to create the required record from which we can discern that the court considered all relevant factors. *See Brin*, 354 Wis. 2d 510, ¶11 (the circuit court is required to "consider those factors that are relevant").[7]

¶49    Because the circuit court did not create a record from which we can discern that it considered all relevant factors and also applied an incorrect legal standard with regard to Dorschner's pension, we reverse and remand for the court to properly exercise its discretion as to whether to award maintenance to Kelly.[8]

---

[7] Again, to the extent that Dorschner intends to make other arguments on the maintenance issue, we have addressed all developed arguments in our analysis of the pension division above, and we accordingly do not consider them again here.

[8] Because the issue is likely to arise on remand, we note that, while the circuit court may not divide Dorschner's non-taxable military disability payments, as opposed to his pension payments, the court may consider the disability payments "as a factor in assessing his ability to pay … maintenance." *See Weberg v. Weberg*, 158 Wis. 2d 540, 544-45, 463 N.W.2d 382 (Ct. App. 1990) (explaining that military disability payments cannot be treated as divisible property).

## IV. Spousal Benefit

¶50    Kelly argues that the circuit court erred when it ended Dorschner's obligation to pay the spousal benefit cost when Kelly turns 62.[9]

¶51    At trial, Dorschner explained the spousal benefit plan as follows:

> The [spousal] benefit plan is essentially a life insurance policy. It entitles [Kelly] to receive $3,20[6] a month upon my death until her passing. Until then and up until the age of 70 or I reach 360 payments, I pay $379 a month so that she can have the benefit of receiving $3,206 monthly upon my death.
>
> ….
>
> [N]o matter what happens with my pension or the outcome of this, it – if this continues and … the [$]379 is paid, she will receive that [$3,206 per month upon my death] no matter what.
>
> ….
>
> If … the outcome of this is that it is not elected, it will be terminated, and I will no longer have to pay the [$]379 a month, but she will also not receive anything upon my death.

In other words, given Dorschner's age when he started paying the spousal benefit cost, in order for Kelly to receive the benefit after Dorschner's death, the monthly $379 payment is required to be made until Dorschner turns 70. Kelly told the circuit court that she was open to reimbursing Dorschner for the $379 monthly cost, or splitting the cost with Dorschner, or having Dorschner pay the full cost, and Dorschner told the court that he would continue to pay the full cost.

---

[9] Kelly does not challenge the circuit court's decision that Dorschner stop paying the monthly spousal benefit cost when Kelly remarries or dies. Accordingly, that part of the court's decision remains in effect.

¶52 The circuit court required Dorschner "to maintain the spousal benefit cost and to name [Kelly] the beneficiary of his account until she remarries, dies[,] or until she is 62 years of age and therefore Social Security eligible." The court did not explain this decision further, beyond stating that this was in addition to the 10% of Dorschner's monthly pension payments that Kelly would receive. Also, neither party asked that the court terminate payment of the spousal benefit cost when Kelly turns 62.

¶53 Kelly does not argue that the circuit court erred by determining that Kelly will be eligible for social security benefits at age 62. *See* 20 C.F.R. § 404.310 (a person is entitled to old-age benefits if the person is "at least 62 years old" and "ha[s] enough social security earnings to be fully insured" and the person "appl[ies]"). Rather, she argues that the court did not explain its rationale for ordering Dorschner to stop paying for the spousal benefit at that time. We agree. The court did not explain why it linked Kelly's eligibility to take social security benefits to the spousal benefit plan, and we discern no link. The spousal benefit is a monthly payment to Kelly if Dorschner predeceases her; the spousal benefit is not tied to Kelly's receipt of social security benefits, nor are those benefits a replacement for the spousal benefit. In addition, the court's decision is ambiguous as to whether, when Kelly turns 62, she can elect to pay Dorschner $379 per month to maintain the spousal benefit with her as the beneficiary. Further, it is unclear what the purpose is of requiring either party to maintain the spousal benefit only until Kelly turns 62. We cannot discern, either from the court's limited explanation or from our review of the record, a rational basis for this requirement.

¶54 Given the circuit court's lack of a reasoned explanation regarding both why it ended Dorschner's obligation to pay the spousal benefit cost when

Kelly turns 62 and the ambiguity as to the effect of that decision, and because any changes to property division and maintenance may affect the court's exercise of discretion on this issue, we reverse and remand for the court to properly exercise its discretion. *See* **Kennedy**, 145 Wis. 2d at 222; *see also* **Thorpe**, 108 Wis. 2d at 198 ("The failure of a [circuit] court to explain its reasons for reaching a particular result is … an [erroneous exercise] of discretion unless an appellate court can come to a reasonable conclusion from the record that the award was appropriate.").

¶55　Dorschner argues that the circuit court properly exercised its discretion because "Wisconsin courts are well within their authority in divorce proceedings to require one spouse to maintain a spousal benefit designation on a pension plan until a specific age, provided the decision reflects the statutory factors and strives for fairness and equity." This generic statement does not support the court's decision here because Dorschner fails to direct us to a basis in the record that would allow us to discern that the court considered the statutory factors or aimed for fairness and equity.

¶56　Dorschner also argues that the provision ending his obligation to pay for the spousal benefit when Kelly turns 62 "was not arbitrary; it was expressly intended to secure [Kelly's] financial interest in the pension and achieve an equitable outcome, akin to a duration-limited maintenance order." As part of this argument, Dorschner cites **Rohde-Giovanni**, 269 Wis. 2d 598, and **Schmitt v. Schmitt**, 2001 WI App 78, 242 Wis. 2d 565, 626 N.W.2d 14, for the proposition that circuit courts have discretion to limit the amount and duration of maintenance even if the result is one that another court may not have reached. Dorschner's references to limited maintenance orders are inapposite. Payment of the monthly cost of the spousal benefit provides no maintenance to Kelly while Dorschner is

alive. And, as stated, the purpose of the court's order ending Dorschner's payment of the spousal benefit cost when Kelly turns 62 is ambiguous. It is not apparent from the record or the court's reasoning how this achieves "an equitable outcome" for the parties.

¶57 Dorschner cites *Dutchin*, 273 Wis. 2d 495, ¶15, for its treatment of a pension and a survivorship benefit as income streams. We have addressed and rejected Dorschner's reliance on *Dutchin* in connection with his monthly pension payments above. In addition, Dorschner fails to explain how the circuit court's assignment in *Dutchin* of the value of a survivorship benefit solely to Ms. Dutchin supports the circuit court's action in this case of terminating the maintenance of the spousal benefit. We reject it on that basis. *See Techworks, LLC v. Wille*, 2009 WI App 101, ¶27, 318 Wis. 2d 488, 770 N.W.2d 727 (we are not required to entertain undeveloped arguments).

## CONCLUSION

¶58 For the reasons explained above, we reverse the circuit court's decisions on the division of Dorschner's monthly pension payments, the division of Kelly's student loan debt, maintenance, and the payment of the spousal benefit cost. We remand for further proceedings. On remand, the court may in the exercise of its discretion take additional evidence as needed and make decisions on

property division, maintenance, and the spousal benefit, consistent with this opinion.[10]

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

Not recommended for publication in the official reports.

---

[10] During the pendency of this appeal, the parties have supplemented the record with items indicating that Kelly has sought relief from the divorce judgment in the circuit court based on circumstances which included that she lost her job and that Dorschner obtained full-time employment. We do not consider these items in our opinion because these filings post-date the circuit court decisions at issue in this appeal. We take no position on the court's consideration of these items on remand.